No. 5994.

C. V. LAGAY, ADMINISTRATOR, VS. MR. AND MRS. J. S. MARSTON.

An act of sale will be annulled where the proof of notorious insanity is manifest.

Where in a sale made by a vendor, declared subsequently to have been notoriously insane, cash was stated to have been paid by the vendee, in decreeing the sale null on account of such notorious insanity *restitutio ad integrum* will not be ordered without proof that the cash stated to have been paid inured to the benefit of the vendor.

APPEAL from the Fifth District Court, parish of Orleans. *Cullom,* J.

*A. & W. Voorhies* for plaintiff and appellee.
*Singleton & Browne* for defendants and appellants.

---

Singleton & Browne, for defendants and appellants, contended :

The preponderance of evidence shows that the vendor was not insane when she sold her property to the defendants.

Even if she had been insane, it is clearly shown she was not *notoriously* so, and that she was not so to the knowledge of defendants.

The transaction complained of was perfectly fair, and much to the advantage of the vendor.

The full value of the property sold was given for it.

At all events, and under all the views that may be taken of the case, the cash portion of the price of sale paid by defendants should be returned to them if the sale is set aside.

A. & W. Voorhies, contra, contended :

The sale made to the defendants is null and void, both because the vendor was then notoriously insane, and because she was so particularly to the knowledge of the vendees.

This is clearly made out by proof in the record.

The very nature and conditions of the act of sale show that the vendor was insane, and that the vendees took advantage of it.

C. C. art. 1788, § 3 ; C. C. art. 402.

The opinion of the court was delivered by

WHITE, J. On the 2d September, 1872, Mrs. Widow Paul Legay, who was then between seventy-four and seventy-six years of age, sold to Mrs. Mary Ann Alonzo, wife of James Shaw Marston, two lots of ground with the buildings and improvements, situate, one on Basin the other on Dauphin street, in this city. The consideration of the sale as stated in the act was $4000, $1000 whereof represented as paid cash and the remainder evidenced by three notes of equal amount payable six, twelve, and eighteen months after date, all to the order of the maker and by her indorsed. The act, moreover, stipulated that the purchaser should pay to the seller during her life a yearly income of two hundred dollars, payable quarterly in advance, the payment of the first quarter being acknowledged ; should provide the seller in addition with lodging, board, wearing apparel, and medical attendance, during her life, and give burial to her remains, and erect a suitable tomb thereover. On the 6th September, 1872, the son of Mrs. Legay commenced proceedings for her interdiction, and having been appointed administrator *pro tempore*, instituted on the 3d of October, 1872, the present suit, which seeks to have declared null and void the sale to which we have just referred.

The proceedings for interdiction culminated in a decree of interdiction, rendered on the 10th of January, 1873, and which is final, having never been appealed from.

The plaintiff was appointed curator, and in that capacity prosecutes this action begun by him as administrator *pro tempore*. The suit was accompanied by a sequestration, the property having been bonded by the plaintiff on the 28th June, 1873. The defendant for answer insists on the validity of the sale. The lower court declared the sale null and void. The question is entirely one of fact, that is, does the proof show that at the time of the sale the vendor was notoriously insane, as prescribed by C. C. 402 ? The proof leaves no doubt on our minds that the deceased many years ago was, while on a visit to France, the victim of mental disturbance ; that since, whatever may have been the fluctu-

ations of her malady, she has been continually the sufferer from a—at least partially—diseased mind. The family physician, under whose treatment she was almost at the inception of her malady and since, unequivocally pronounced her insane. So did the medical men who examined her in the interdiction suit. We coincide with the lower judge in thinking, after a review of all the testimony, that its burden largely establishes that the mental derangement was notorious in the legal sense of the term, that is, "was generally known by the persons who saw and conversed with the party." C. C. 402. This conclusion is decisive of the case, except that it is urged in the brief of counsel, though *not in the pleadings*, that the court below should have decreed by way of *restitutio ad integrum* the return of the notes purporting to have been furnished and cash paid. Even could we supply pleadings not before the lower court, we could not give the relief asked; now even were it conceded that the declarations in the act of sale and the testimony in the record conclusively established that the notes were delivered and the cash paid to the vendor, such proof would not, without additional proof that the delivery and payment redounded to the benefit of the vendor, justify their restitution.

"When minors or persons under interdiction * * * are admitted * * * to the benefit of restitution against their engagements * * * the re-imbursement of what may have been paid them in consequence of those engagements cannot be required of them, unless it be proved that what was paid accrued to their benefit." C. C. 2229. True, the terms of the law refer only to interdicts, and not to contracts made with persons notoriously insane. But the principle is alike applicable to both. The right to destroy a contract made with one notoriously insane imports, as a legal consequence, restitution only up to the benefit received ; otherwise the contract would, by the very act of annulment, be enforced, and the will, which the lawmaker has recognized as legally incapable of generating contracts, become the creator of obligations. As aptly said by Demolombe, vol. 29, p. 173 : "Those who are relieved from the obligations of contracts on account of incapacity, cannot as a matter of course be bound by the contract which is annulled. They can only be bound by the equitable theory that one person cannot be allowed to enrich himself at the expense of another." The proof is, that the vendor left the house of her son a day or so before the sale, which was on the 2d of September ; that after the sale she went to the house of the vendees, whence she was removed on the 5th of September, neither the notes nor money being found then in her possession. Nor do we think the testimony as to the deposit referred to by counsel adequate to show the resulting benefit. The son who testified to the $1400 testifies that it had been in bank for a long time, thereby precluding

the possibility of its having been the result of the sale. We will reserve the rights of the defendants.

The judgment below is affirmed with costs, reserving to the defendant her right to recover such sum as she may hereafter show to have actually inured to the benefit of Mrs. Legay, resulting from the act of sale of the 2d September, 1872.