## WOODS v. MOFFETT.*
### No. 5054.

Court of Appeal of Louisiana.
Second Circuit.
June 29, 1935.

Fred L. Jackson, of Homer, for appellant.

*Rehearing denied July 15, 1935.

Land & Kinnebrew, of Homer, and Langston & Thomas, of Minden, for appellee.

DREW, Judge.

The lower court in a written opinion has properly stated the issues in this case and has come to a correct conclusion as to the negligence of plaintiff, and to our minds, has awarded a proper judgment in the case: The opinion is as follows:

"This is a suit for damages growing out of an automobile accident which occurred on the 3rd day of July, 1934, at about 9 o'clock P. M., on the paved highway between Minden and Shreveport, Louisiana, and at a point on said highway about two miles west of the city of Minden, between a truck, owned by the plaintiff and driven by his agent, Sam Carter, a negro, and a Chevrolet sedan automobile, owned by the defendant and driven by him.

"The two automobiles collided at the west end of a concrete bridge on said highway. Just before the collision, the plaintiff with his negro driver was traveling west toward Shreveport, and the defendant was traveling toward Minden.

"The plaintiff seeks to recover from the defendant the sum of $274.65, being the damages done to his truck by said collision and the amount he was forced to expend to hire another truck during the time his truck was being repaired.

"The plaintiff alleges that his truck was being driven on the right and proper side of said highway and bridge at a speed of about 25 to 30 miles per hour, and that as his truck was about to leave the bridge, the automobile driven by defendant ran into the west end of the bridge with such force that it was thrown across the highway and in such a manner that his truck had not sufficient room to pass and that the two automobiles collided, forcing the truck into the bridge and onto the guard rails, thus causing damages to his truck in the sum of $254.65, and that he was forced to hire another truck during the time his truck was being repaired, which cost him the sum of $20.00; that the defendant was driving his automobile while under the influence of intoxicating liquor and that he, defendant, was driving his said automobile in a zigzag manner, and that the defendant negligently and carelessly ran his automobile into the end of the bridge and is therefore liable to plaintiff for the damages sued for.

"The defendant, in his answer, denies all the allegations of plaintiff's petition, except the defendant's residence, and in reconvention prays for judgment against the plaintiff in the sum of $3,452.50, being the damage done to his automobile, amount paid for physician's services, nurse's services, drug bills, and for loss of time from his work; for personal injuries, pain and suffering. The defendant alleged that the collision and accident were caused solely by and through the negligence and carelessness of the plaintiff for the reason that he, the plaintiff, through his agent, and employee, Sam Carter, who was acting in the course of his employment, and under the direction and control of plaintiff, drove the truck of the plaintiff along said highway and onto said bridge in the middle thereof at an excessive rate of speed, namely, 60 miles per hour; that when he, defendant, saw the truck coming in the middle of the bridge, he was within 20 or 30 feet thereof, and that he (defendant) immediately applied his brakes; that he turned farther to the right in order to avoid a collision with the truck, and in attempting to do so, ran into the southwest corner of the bridge; that at the same time he (defendant) struck this corner of the bridge, the truck of the plaintiff ran into his automobile, throwing defendant out of his automobile and onto the pavement, fracturing his skull and damaging his automobile.

"Defendant further alleged that such acts on the part of plaintiff and his driver were the sole and proximate cause of said collision and resulting damages; and prayed for judgment against plaintiff for such damages, and for personal injuries, pain and suffering.

"The testimony shows there were four persons who actually saw the accident: the plaintiff and his driver, Sam Carter; the defendant and Mr. Frank Kimball, who was riding with the defendant.

"All of the witnesses agree that defendant was on the south and proper side of the highway as he approached the bridge and was not driving at an excessive rate of speed.

"The plaintiff and his driver both testified that plaintiff's truck was being driven on the north and proper side of the highway and bridge, at 25 or 30 miles per hour,

while the defendant and Mr. Kimball both testified that plaintiff's truck was being driven in the middle of the highway and bridge and at an excessive rate of speed.

"As to whether defendant was driving while under the influence of intoxicating liquor, I am convinced from the testimony that he was not. He says that he drank a part of a bottle of beer at Dixie Inn and nothing else, and he is corroborated in this by Mr. Kimball, and further by Drs. Tatum and Sentell, both of whom examined the defendant, immediately after the collision. Dr. Sentell who examined defendant, only a few minutes after the collision, and Dr. Tatum, who examined defendant about three hours afterward, testified positively that he (defendant) was not under the influence of intoxicating liquor. And further, Mr. Anderson, who assisted in bringing the defendant to the Minden Sanitarium from the place of the collision testified that defendant was not drunk, and that he held his head in his lap while he was being transferred to the sanitarium, and was in a good position to notice and know the defendant's condition. It is true that Mr. Horton, (Houston correct) the plaintiff, and Sam Carter, the negro driver, say that defendant was drunk and that they could smell whiskey on his breath, but I think that this can be accounted for from the fact that there were two cases of beer in the automobile driven by defendant, five or six bottles of which were broken by the collision, and those who were near the automobile of defendant could have easily detected the odor of the beer from the broken bottles and assumed that the defendant was drunk and had the odor of intoxicants on his breath.

"As to whether defendant was driving his automobile in a zigzag manner just before he reached the bridge, I am convinced that if he had, the plaintiff and his driver would have taken some steps to avoid hitting an automobile so driven. They testified that they did not slow the truck down, but continued on at the same rate of speed onto the bridge and did not apply the brakes on the truck until it was within five feet of the end of the bridge, at about the time of the collision.

"The testimony of the plaintiff and his driver is not corroborated by other witnesses or the physical facts. All the witnesses say that after the collision, the truck, after hitting the Chevrolet and turning it around, ran into the guard rail on the north side of the highway and then continued on for 142 feet and across the highway until it hit the south guard rail, uprooting a heavy post which supported the rails, and the back end of the truck went over the rail toward the ditch. The plaintiff's driver testified that he applied both brakes of the truck just before the cars collided, and, with both brakes applied and in working order before the accident, this truck ran for 142 feet before it came to a standstill. These facts are convincing to my mind and show that the truck was being driven at a very fast rate of speed.

"On the other hand, the defendant and Mr. Kimball are corroborated by the testimony of Mr. and Mrs. Horton, witnesses called for plaintiff, when Mr. Horton said he could not see either the truck or its lights before the collision, and Mrs. Horton, who said that she did not see the truck or its lights before the collision. In fact, the first time she saw the truck was after the collision and after it had pushed the Chevrolet out of its path and was coming toward her. This would show that the truck was being driven on the south and wrong side of the highway, or to say the least, it was not being driven on the north and proper side of the highway and bridge just before and at the time of the collision. The defendant's automobile was being driven on the south side of the highway, and the view of the truck and its lights were cut off from Mr. and Mrs. Horton by the defendant's automobile. If the truck had been on the north side of the highway and bridge, certainly Mr. and Mrs. Horton could and would have seen it and its lights, for the highway is straight for some distance in each direction from the bridge.

"The court has known Mr. Moffett and Mr. Kimball for several years and believes that they testified to the truth in this case, and that plaintiff's truck was being driven on the wrong side of the highway and bridge, at a very rapid rate of speed, and continued to be so driven until it struck the automobile of the defendant. The court further believes that the defendant, having been placed in such a position through no fault of his, tried to turn farther to his right in order to miss the truck, but because of the embankment and guard rails, could turn no farther and his automobile was almost brought to a stop before he struck the end of the bridge, and that he did apply his brakes when he

saw the truck of plaintiff being driven on the wrong side of the highway and bridge. The black marks on the pavement showed that the brakes of defendant's automobile were applied. The bridge was a two-way bridge and it was the duty of the plaintiff to keep on the north side of same and give the defendant one-half. The fact that plaintiff and the driver for plaintiff were driving on the wrong side of the bridge was the sole cause of the collision.

"There is another circumstance: the plaintiff's truck immediately preceding said collision was being driven on the wrong side of the highway, about one-half mile east of the bridge or point of collision, and at which time Mr. L. Brantley was forced off the highway onto the shoulder. This testimony shows that plaintiff and his driver were not correct when they both testified that they always kept to the right of the road, and it is likely that they did on this occasion continue to so drive until they hit the defendant's automobile.

"Having concluded that plaintiff's truck was being driven by his agent and employee while acting in the course of his employment, on the wrong side of the highway, while meeting the automobile of the defendant and in violation of the law of the road, and the defendant in the emergency caused solely by the fault and negligence of the plaintiff and his driver, acted as an ordinary prudent person would under the circumstances, and tried to avoid the accident, but in so doing, turned his automobile as far as he could to the right and struck the end of the bridge, the plaintiff is liable to the defendant for the damages caused him and his automobile.

■ "The defendant has established all of the items of damages sued for, as well as the amount for loss of time, and for these items he is entitled to judgment. As to the claim for personal injuries, pain and suffering, defendant claims the sum of $2,544.34. The testimony shows that the defendant was thrown from his automobile on to the concrete pavement and his skull fractured, and was knocked unconscious and remained so until the next morning; that he was confined to his bed for some time and did not go back to work until August 23rd, and then was forced to stop working on September 11th, and because of his nervous condition and pain which he suffered, had not worked any more up to the day of the trial of the case, November 8, 1934. His physician testified that

if the defendant continued to improve, he considered that within two or three weeks from the date of the trial he would be able to resume his work, which would fix the time he would be able to again resume work about December 1, 1934. Under all the circumstances of the case, I consider that an award of $1,500.00 for personal injuries, pain and suffering, right and proper.

"There will therefore be judgment in favor of defendant and against plaintiff, rejecting the demands of plaintiff, and that the defendant have and recover judgment in reconvention against the plaintiff in the sum of $2,309.16, with five per cent per annum interest from judicial demand until paid; and that the plaintiff pay all costs of this suit."

Enos C. McClendon, Judge, Second Judicial District Court, Claiborne Parish, Louisiana.

■ Plaintiff, in the principal suit, argues most seriously that the defendant was intoxicated, and, in fact, bases his claim for a reversal of the lower court almost entirely upon that ground. While it is true that plaintiff, his driver, and the witness, Mr. Houston, testified that defendant smelled of liquor, we are convinced beyond any doubt that defendant was not intoxicated. Dr. Sentell, who saw defendant within fifteen or twenty minutes after the time of the accident, testified that he especially smelled defendant's breath to be sure whether his actions were from injury to the head, or from intoxication, and was positive defendant did not have the odor of liquor on his breath. Dr. Tatum, who examined defendant a few hours later, was equally sure there was no odor of liquor on his breath. Mr. Anderson—certainly a disinterested witness—rode in the car with defendant when he was taken from the scene of the accident to the sanitarium in Minden. Defendant's head was on Mr. Anderson's shoulder, and he is positive there was no odor of liquor on defendant's breath. Due to the fact that persons driving under the influence of liquor cause so many automobile wrecks, it is not unusual now for a person who may be a teetotaler to be accused of being intoxicated, when he is involved in an automobile wreck. To our mind, the evidence is most convincing that defendant was not intoxicated.

Plaintiff, in argument and in brief, insists that the case should be decided upon

the testimony of his witness, Mr. Houston, who was disinterested. However, the judge of the lower court has passed upon the question of the integrity of defendant and Mr. Kimball, who was in the car with him, and in his written opinion vouched for their integrity. This being true, under the testimony of Mr. Houston, the defendant, and Mr. Kimball, it is certain that Mr. Houston was mistaken in a great many instances.

 The lower judge is the sole judge of the integrity of the witnesses. We do not doubt the honesty of Mr. Houston, but it is clear that he was mistaken in the car he saw at Blossom Heath, which is only 4 miles out of Shreveport, and in the car he saw at Dixie Inn, which is only 4 miles out of Minden. It is easy for us to understand how he could make the mistake. He knew none of the parties, was not interested in the case, and it was several months after the accident when he was called as a witness. His mind at that time was not as clear as to detail as it would have been, had he testified immediately after the accident. He testified that he saw the defendant's car 100 yards west of Dixie Inn, and followed it about a 100 yards behind until the wreck happened, which was at a point 1½ to 2 miles east of the Dixie Inn.

The defendant and Mr. Kimball both testified that when they arrived at Dorcheat bayou, approximately 1 mile east of the Dixie Inn, they remembered they had not engaged the fish for the next day and turned around and went back to the Dixie Inn, where they ordered the fish, ate a sandwich, and split a bottle of beer, all of which consumed about fifteen or twenty minutes time.

If we take the testimony of the defendant and Mr. Kimball, whom the lower court says are truthful, then we are forced to say Mr. Houston was mistaken. Furthermore, it is a very evident fact in the testimony in this record that plaintiff was traveling at an excessive rate of speed and in the middle of the road. It is likewise evident that defendant was on his right side of the road, as far as possible, if not, he would not have struck the post on the bridge. It is further very evident from the testimony in the case that plaintiff did not slow down nor attempt to slow down before the accident; that the defendant did all in his power to bring his car to a stop and had practically succeeded in doing so, as the impact of his car with the post on the bridge did little damage and the car did not travel any distance after being struck by plaintiff.

We are thoroughly convinced, after a most careful study of the case, that the sole proximate cause of the accident was the negligence of plaintiff in traveling at excessive speed in the middle of the road, and in not reducing his speed upon approaching the bridge, and at the same time, turning his car to the right side of the road. If he had done so, there would not have been an accident. There was no negligence on the part of defendant, who did all within his power to avoid the accident.

The judgment of the lower court is correct and is affirmed, with costs.