BRUNOT, Justice.
 

 This is a suit to annul a certain mineral, oil, and gas lease, and the assignment thereof, and to order the cancellation from the records of Caddo parish, La., of said recorded lease and assignment, in so far as they purport to cover the undivided five-sixteenths interest of the plaintiff’s son, Gus Gipson, in the following described property:
 

 “The Southwest Quarter (S.W.
 
 %)
 
 of the Southeast Quarter (S.E.%) of Section Fifteen (15), Township Twenty-three (23) North Range Sixteen (16) West in Caddo Parish, Louisiana.”
 

 The lease was executed on February 27, 1933, by Lucinda Gipson and her three children, Gus Gipson, Lelia Dimmer, and Rosalie Jackson, in favor of N. S. Spear-man, covering the above-described land, and on March 20, 1933, N. S. Spearman assigned said lease to the United Gas Public Service Company.
 

 Gus Gipson was formally interdicted approximately two years after the date of the lease, but this suit is based upon the facts alleged in articles 6, 7, 8, 9, 10, 11, 13, and 15 of the petition. We quote from plaintiff’s brief the following:
 

 “This suit is based upon the allegation that Gus Gipson was notoriously insane at the time the lease was executed and that his insanity was well known to N. S. Spearman, lessee, at the time, and that the United Gas Public Service Company knew, before it started operating upon said property, that Gus Gipson was insane at the time he executed the lease and it was therefore an operator in bad faith; that the said insanity of Gus Gipson was notorious and well known to the public generally, in the community in which he' lived, to wit; in and around Rodessa, in Caddo Parish, Louisiana, and that the said Gus
 
 *21
 
 Gipson, by reason of said insanity did not make and could * * * not make or enter into the said contract of lease.”
 

 Both defendants answered the suit. Their answers are denials of the material averments of the petition and, except for an alternative prayer of the United Gas Public Service Company for judgment entitling it to recover out of the proceeds of the oil arid gas sold, the proportional share of the drilling, equipping, and operating cost, both pray for judgment rejecting the plaintiff’s demands at her cost.
 

 The trial resulted in a judgment for the plaintiff, in effect, as prayed for in the petition, but in favor of the United Gas Public Service Company in accordance with the alternative prayer of that defendant, and taxing the defendants with the costs of the suit.
 

 Both defendants appealed from the judgment. N. S. Spearman perfected a devolutive appeal and the United Gas Public Service Company perfected a suspensive appeal therefrom.
 

 The case presents two questions of fact, viz., whether or not Gus Gipson was insane at the time the lease was executed, and as to the good or bad faith of the defendants. Both of these questions were resolved in favor of the plaintiff. This is evident from the judgment rendered, although only oral reasons were assigned therefor. We have therefore read the testimony with the following legal principles in mind: On questions of fact the conclusions of the trial judge with respect to the credibility of witnesses and the weight to be given their testimony is entitled to great weight, and his judgment, when based upon facts alone, will not be disturbed by the appellate court unless it is clearly erroneous. These principles are recognized in an unbroken line of authorities too numerous to mention. We will, however, cite the following: Fecel, Administratrix v. Guinault, 32 La.Ann. 91; Legay, Administrator v. Marston, 32 La. Ann. 170; Shnaider v. Graffagnini, 154 La. 363, 97 So. 491; Williams v. Hochfelder, 154 La. 1033, 98 So. 630; Martinez v. Fabacher, 118 La. 954, 955, 43 So. 632; Williams v. Louisiana Railroad Co., 121 La. 438, 46 So. 528. Where the question of insanity is at issue and general insanity is established, under the provisions of C. C. art. 1788, par. 9, the burden of proof is shifted. We quote the paragraph:
 

 “9. That evidence of general and habitual insanity, in order to avoid a contract, may be rebutted by showing that the contract or act was made during a lucid interval; but where general insanity, even with some intervals, is shown, the burden of showing that the particular act in dispute was made during such an interval, is thrown on the party who supports the validity of the act or contract.”
 

 With the announced principles in mind, the testimony convinces us that Gus Gipson was insane and was generally known to be so long prior to the date of the lease to N. S. Spearman, and that N. S. Spearman was fully aware of that fact prior to and at the time the said lease was signed, and that Spearman’s codefendant had knowledge of Gus Gipson’s insanity
 
 *23
 
 prior to beginning its operations on the leased land.
 

 During the course of the trial, five experts testified in the case. Dr. H. B. Wren says he was called to see Gus Gipson in 1924 and 1926. His diagnosis was that Gus was insane. He was suffering from dementia praecox. The lease was signed February 27, 1933; hence Dr. Wren found him insane seven or eight years before that date. Drs. Butler and Paul examined Gipson about a month prior to the date of the lease. They diagnosed the case as insanity; “a case of dementia praecox of the catatonic type.” Drs. Phillips and Rein were called, Dr. Rein being called as a witness for defendants. They first saw the patient about six months after the date of the lease. Both concurred in the diagnosis of Drs. Wren, Butler, and Paul. The testimony of lay witnesses relates to specific acts of Gipson, extending over a period of years, generally known and commented upon in the neighborhood in which he lived, and of Gipson’s arrests and periods of incarceration in jail pending a partial restoration of his mental faculties when he was released in the custody of his mother.
 

 We think it needless to comment upon the testimony any further than to say that it is shown that Gus Gipson was called from his bed to sign the lease and that his conduct at that time was that of an irresponsible idiot.
 

 For the foregoing reasons, the judgment appealed from is affirmed at appellants’ cost.