Plaintiff, Lawrence Williams, sued Charles Perrin, a trucking and drayage contractor, and his insurance carrier, Commercial Standard Insurance Company, in solido, claiming the sum of $44,632 for personal injuries alleged to have been sustained because of the negligence of Perrin.
Plaintiff alleged that at about the hour of 10:50 o'clock a.m. of June 18, 1940, he was riding on a motor vehicle of his employer, Clerc Foundations, Inc., as it traveled the highway leading from Gretna toward the Huey P. Long Bridge; that said vehicle was composed of a truck and trailer and that he was "sitting on the left hand side of the said trailer, with his legs stretched out in front of him on the floor of the trailer"; that the said vehicle was traveling in its own right hand lane and that, when it had reached a point about one mile above Gretna, it met a large stake-body truck going in the opposite direction, owned by and being operated for Charles Perrin, defendant; that defendant's oncoming truck was covered with a tarpaulin, *Page 559 
which was left untied on the side, causing it to reach or flap out; that when the vehicles passed each other, the loose tarpaulin "wrapped itself around the right foot of petitioner", fracturing plaintiff's ankle and injuring his knee.
The defendants jointly answered, denying the allegations of the petition and setting forth that none of its trucks or truck drivers were involved in the alleged occurrence. Alternatively, it was averred that, if the court should find that the truck which caused plaintiff's injuries was owned by and operated for Charles Perrin, then said injuries resulted from the negligence of the driver of the truck in which plaintiff was an occupant.
The National Casualty Company, the compensation insurance carrier of the Clerc Foundations, Inc., plaintiff's employer, intervened, asking for recognition of its statutory right to reimbursement in the amount already paid plaintiff as compensation, and for the amount to be paid in the future, including amounts expended for medical attention, not exceeding the statutory limit of $250 should there be judgment herein for plaintiff against the defendants.
On these issues a trial was had which resulted in the dismissal of plaintiff's suit; hence this appeal.
An examination of the record reveals that there can be no doubt that plaintiff was injured in the manner alleged; that he was free from negligence and that the cause of the accident was the flapping tarpaulin on the passing truck catching plaintiff's ankle, with the resulting injuries alleged. The evidence also establishes the fact that the offending truck involved was painted red and had a stake body and that its driver did not stop after the accident, he undoubtedly having been unaware of the occurrence.
As a consequence of these established facts, the only issue presented with respect to defendant's responsibility is the identity of the offending truck, there being no question raised that its operator was not careless and negligent in allowing the tarpaulin to flap and fly out beyond his lane of traffic.
The plaintiff, in support of his claim, tendered the testimony of G.L. McGee, W. Jack Ridder and James Williams, all of whom were occupants of the truck in which plaintiff was riding. The testimony of Ridder and James Williams must, of necessity, be eliminated in determining the question of the identity of the truck, inasmuch as they frankly state that they did not see any name or mark of ownership on it. Plaintiff testified that he, also, did not see any name or mark of ownership on the offending truck, but that he did see that it had "beer cases on it". On the other hand, McGee testified that the offending truck bore the inscription of "Charles Perrin" on the door, which, it is admitted, is the name appearing on defendant's trucks.
The district judge, in his written reasons for judgment, refused to give credence to the testimony of McGee. Our learned brother, after reviewing the evidence, concluded that McGee was "laboring under what is generally termed an `association of ideas', or a `systemized delusion', that is: he (McGee) had frequently seen red trucks on the road, knew that Perrin's trucks were red, was occupied with his driving in attempting to avoid a collision, associated this red truck with a name painted on the door with Perrin's trucks * * *, and as a result came to what would be a natural conclusion to the effect that the offending truck was one of Perrin's trucks". The judge a quo commented on the improbability, or even the impossibility, that McGee could have read the printed name under the existing circumstances and as the truck "flashed by". Aside from these conclusions, our brother below concluded that "from his general conduct and demeanor while testifying, I do not believe that McGee was telling the truth when he testified that he could and did identify the offending truck as a truck belonging to the defendant, Perrin". As a consequence, it is pertinent to inquire into McGee's testimony in order to resolve the correctness of these findings.
McGee testified that on the day of the accident he was driving a truck to which was attached a long, extra-wide trailer and upon which was mounted a pile-driver. It is shown that the roadway, at the point of the accident, was narrow, and therefore required careful driving at a reasonable speed to avoid sideswiping passing vehicles. The speed of the vehicle which was being operated by McGee is variously estimated by himself and by those riding with him at from fifteen to twenty-five miles an hour and that of the offending vehicle from thirty to forty-five miles an hour. Due to the narrowness of the road and the width of the truck and trailer on which plaintiff *Page 560 
was riding, extra precaution was required on the part of McGee to look straight ahead as his and the other vehicle converged and passed each other. McGee further testified that the offending vehicle passed his truck with a clearance of only six inches between them and that, as the offending truck "flashed by", he looked towards his left and downward, and observed the name of "Charles Perrin" painted on the door. It is to be observed that at that moment the accident had not as yet occurred, and that it was only after the offending truck had passed that his attention was called to the injuries received by plaintiff. He further testified that he brought his truck to an immediate stop and jumped out and assisted plaintiff; that one of the occupants suggested uncoupling the truck from the trailer and giving "chase" to the offending truck. To this suggestion it is shown that McGee replied that it was not necessary to do so, as he knew the name of the truck, though, strangely, no specific mention of the name of the owner was then and there made.
It is shown that, following the accident, intervenor, National Casualty Company, made an investigation to determine whether plaintiff had been injured in circumstances entitling him to workmen's compensation, and, if so, whether the accident charged any third party with liability in damages. After concluding that liability existed under the workmen's compensation laws, intervenor, through its agent, interviewed plaintiff and the three other occupants. The statements of plaintiff and the two occupants, save McGee, were as above detailed, they having no knowledge of the identity of the offending truck. However, McGee, in his statement to the agent, identified the offending truck as being a "White-make" truck and bearing the name of Charles Perrin. Based upon this identification, intervenor's agent contacted defendant, this being defendant's first notice or knowledge of the accident. On receiving this notice, it is shown that all of the defendant's truck drivers were questioned, with the result that neither had any knowledge of the accident. It is further shown that intervenor's agent and the agent of defendant's liability insurer made further inquiry, the result of which showed that defendant owned only one "White-make" truck, which bore no resemblance whatever to the truck described by McGee, and that none of defendant's trucks had ever transported beer or beer cases, anent plaintiff's assertion that he saw beer cases on the offending truck.
At an end to attain a practical solution of the question of identity, McGee was permitted to visit the yards of defendant and to there view all of the trucks owned and operated by defendant. From this inspection, McGee's prior positive assertion that at the moment of the accident, he recognized the offending truck as being a "White" truck, was disspelled, for it is shown that he thereupon identified and pointed out an International truck, bearing 1940 license tag No. 582,244, as being "either the truck that passed me on the day in question, or one very similar thereto".
It is further shown that the records of defendant regarding the movements and whereabouts of its trucks on the day of the accident established the fact that the truck selected by McGee as the offending truck was at defendant's warehouse continuously from 7:00 o'clock a.m. to 12:00 o'clock noon on the day of the accident, whereas the time of the accident, as already shown, was fixed by petitioner as 10:50 a.m. These records further show that the truck so identified was used exclusively in the hauling of freight for the Texas Pacific Railroad freight depot and was nowhere near the scene of the accident until late that afternoon.
The responsibility of defendant rests squarely and solely on a question of fact and on the credibility, vel non, of a single witness who testified in the court below. In reading the testimony of this witness, we must bear in mind the legal principle that the findings of the trial judge, bearing upon the integrity of the witnesses, are entitled to great weight. Having had the witnesses before him, he was afforded the opportunity to observe their deportment and manner while testifying, an advantage which enabled him to better determine and measure the degree of credibility and the weight to be given the testimony, and one which we in the appellate court do not enjoy. We must further bear in mind that the conclusions of the trial judge, when based upon facts alone, will not be disturbed by an appellate court unless they are clearly erroneous. These principles are recognized in an unbroken line of authorities. Woods v. Moffett, La.App., 162 So. 426; Roberts v. Lower Coast Lumber Company, Inc., La.App., 166 So. 498; Gipson v. Spearman et al., 186 La. 18, *Page 561 171 So. 558; Lewis v. Wedemeyer, La.App., 174 So. 116.
It likewise is well settled that a plaintiff, in order to recover, must establish his claim to a moral and legal certainty. Authorities in support of this principle are too numerous to mention.
The trial judge was convinced that the testimony submitted by plaintiff was not genuine, nor sufficiently acceptable to warrant recovery in this instance. We are unable to find anything in the record exhibiting obvious error in these conclusions. In the absence of salient mistake on his part concerning his appreciation of the facts presented, we will subscribe to the view of the cited authorities.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., takes no part.