Plaintiff is appealing from a judgment of the District Court rejecting his demand for $700.00 claimed to be due him as commission on the sale of real estate in the city of Monroe.
The pleadings and the evidence in the record disclose that on May 13, 1946, defendant signed a regular form of agreement listing the property with plaintiff for sale under an exclusive contract for a period of thirty days. The contract also provides that in the event the property is sold within forty-five days after the expiration of the exclusive listing to anyone to whom the broker has quoted the property, the commission is to be paid. Defendant denies he read the contract and denies that he knew that it contained the forty-five day clause. However, this is not the defense he makes to the demand.
Plaintiff advertised the property for sale in both of the Monroe daily papers for several days. He gave the street on which the property is located, but not the number, in these advertisements.
He testified that on June 4, 1946, one Eddie Ross called him about the property and was told the street number and the name of the owner and the price, and plaintiff says that Ross replied that he would look at the property.
About June 8, 1946, defendant called plaintiff and wanted to withdraw the listing, giving as the reason that his wife and his mother-in-law did not want him to sell the property. Plaintiff gave defendant a letter, dated June 8, 1946, reading as follows:
"This is to certify that I will release contract signed by you dated May 13, 1946 on the house located at 321 N. 6th Street, Monroe, Louisiana, providing this house is not sold. In the event the house is sold within the time of my contract, I will receive my 5% commission."
Plaintiff did not advertise the property any more and Ross did not contact him again. On June 14, 1946, defendant sold the property to Eddie Ross for $14,000, the same price he had placed on it in the contract with the plaintiff. The consideration was paid $7,661.04 cash, and the assumption of the payment of the mortgage on the property for $6,338.96. It is contended that as the listing provided for $14,000.00 cash and was sold on the above terms, no commission was due. However, this is not the main defense to the suit as will be hereafter shown, and in any event we are not impressed with this defense.
On the trial of the case, there was little difference in the versions of plaintiff and defendant up to the 8th of June. Defendant, however, is certain that plaintiff did not tell him about the call from Ross, and plaintiff is uncertain whether he did or did not tell him, but thinks he did.
Ross testified that he did not call plaintiff over the telephone at all and that the first he knew about the property being for sale was on the day he bought it; that he saw defendant sitting in his car in front of a cafe in Monroe and went over and spoke to him and got in the car with him; asked defendant what he was doing and was told that defendant was trying to make a few dollars and was also trying to sell his house. He says that he and defendant then went out and looked at the house and then he (Ross) went to the office of Mr. O.A. Easterling, an attorney in Monroe, and employed him to examine the title and closed the trade about four o'clock the same afternoon.
Defendant says he had already had lunch and was waiting to pick up a negro boy he had working for him. Ross says it was 12:30 or one o'clock when he first saw defendant. Mr. Easterling says it was just before noon when Ross asked him to examine the title and that he examined it during the noon hour. He had previously examined the title and there was not much work to be done on it and it took him only a short time to examine it.
The District Judge in his reasons for judgment said:
"The plaintiff further testifies that at no time did he ever advise Nicholas Bruscato, the defendant, that Mr. Ross had called him relative to purchasing this property."
The Judge is in error about this. Plaintiff said he could not say definitely that he *Page 58 
did or did not tell the defendant about the call from Ross but thinks he did.
The District Judge concluded that plaintiff had failed to prove his case and accordingly rejected his demand.
[1] It is only in cases where the finding of facts by the District Judge appears to be manifestly erroneous that such finding will be reversed. In this case, plaintiff made out his case by the testimony of himself and his secretary, unless defendant successfully contradicted the evidence they gave. It is apparent that the District Judge accepted and believed the testimony of defendant and Ross, else his judgment would have been in favor of plaintiff.
The evidence of defendant and Ross appears to us so incredible that to predicate a judgment thereon would do violence to our sense of fairness and justice. It seems entirely improbable that their contact with reference to the property occurred as they say it did. They were well acquainted with each other. Not long after the trade, they made a trip to Shreveport in defendant's car to see a ball game.
It is true that Ross denied telephoning plaintiff in response to his advertisement of the property, but we are convinced he did. Plaintiff recounted the conversation he had with him about the sale of some property on Morris Avenue that plaintiff had sold to him for one of the banks in Monroe several years before for about $4,000.00, and plaintiff says that Ross told him in this telephone conversation that he had sold this property for $7,000.00 or $7,500.00, and that he wished he had bought a hundred houses like it from him. We are satisfied that plaintiff was talking to the same Ross that bought the property, and we believe that the record in this case justifies the belief that between the time Ross called plaintiff and the 8th of June when plaintiff gave defendant the letter quoted above, that Ross had contacted defendant and that they planned to evade the payment of the commission to plaintiff.
The reports of appellate court decisions of this State teem with similar cases and as we said in the case of Jeter Monroe v. Daniels, 25 So.2d 911, 912: "Down through the years, as shown by the reported cases, beginning with Gottschalk v. Jennings et al., 1 La. Ann. 5, 45 Am.Dec. 70, to the present, people have sought to reap the benefits of the efforts of real estate brokers without paying them for their work. In every case where the broker has procured the purchaser, the courts have awarded judgment."
Other cases supporting the conclusion we have reached are Sollie v. Peoples Bank Trust Co., La. App., 194 So. 116; Gamblin v. Young, La. App., 187 So. 854; Bullis Thomas v. Calvert et al., 162 La. 378, 110 So. 621; White v. Havard, La. App. 25 So.2d 108.
[2] We are satisfied that Ross learned about the property through the advertisements that plaintiff ran in the papers. We are fortified in reaching this conclusion by the action of defendant. On June 8, he was pleading for a release from the contract with plaintiff, giving as his reason that his wife was about to quit him, and his mother-in-law also objected to the sale of the place, and then six days later he sells it. It is true that he testified that he found out he could sell the property without his wife's signature, and that he went ahead with the sale. We are not impressed by this testimony. If this is so, plaintiff is entitled to judgment for his commission.
For these reasons the judgment appealed from is reversed and there is now judgment in favor of the plaintiff, E.W. Cruse, and against the defendant, Nicholas Bruscato, for the full sum of $700.00, with five per cent per annum interest from June 19, 1946, until paid, and for all costs of this suit in both courts. *Page 59