McBRIDE, Judge.
Defendant, who owned the double house, 1025-27 Esplanade Avenue, employed plaintiff, a' real estate broker, as his agent to secure a purchaser for the property. The contract, which is dated June 10, 1942, was signed by defendant, and it authorized plaintiff to find a buyer for the property for $5,250 cash, or any other price that might subsequently be agreed upon. Defendant agreed to pay the broker a commission of five per cent of the gross amount of any sale which might be effected during the term of thirty days from the date of the contract “or on the gross amount of any such agreement made within forty-five days after the expiration or termination of this contract, with anyone to whom said property has 'been quoted during the term of this contract.”
Upon being so employed, plaintiff attempted to find a buyer for the property. It seemed that plaintiff obtained offers from several prospective purchasers, all of which were rejected by the owner because of the inadequacy of the price offered. Two of these offers, one for $4,000 and the other for $4⅝500, had been made by one Erie Graci.
On November 13, 1942, LaNasa sold the-property by formal notarial act to a Mrs. Rosa Arnica Graci for $4,800. The said purchaser is the mother, of Eric Graci whose two offers to buy the property had been rejected by the defendant.
The present suit was filed several .months after LaNasa sold the property to Mrs. Graci. Plaintiff claims that LaNasa is indebted to it for $240, being a commission of five per cent of the sum of $4,800 paid for the property by Mrs. Graci. The petition alleges that while the formal act of sale between LaNasa and Mrs. Graci was not passed until November 13, 1942, the agreement between them respecting the' sale of the property had been confected on July 20, 1942, within a period of forty-five days of the expiration of the contract of employment. It is specifically alleged that during the term of plaintiff’s employment as broker to find a buyer for the property, plaintiff “quoted” the property to Mrs. Graci and negotiated with her for the sale of the property.
LaNasa defends the suit on the ground that plaintiff was not the procuring cause of the sale; he denies that plaintiff ever negotiated with Mrs. Graci. The answer also álleges that for several years prior to listing the property with plaintiff, LaNasa had personally carried on negotiations with Mrs. Graci looking to a sale of the property to her.
Plaintiff recovered a judgment below for the amount prayed for, and defendant has appealed.
The provision in the contract respecting the plaintiff’s rights within the forty-five-day period after the termination of the employment is clear and explicit and is the law between the parties. LSA-C.C. art. 1901. If the plaintiff during its employment had quoted the property to Mrs. Graci or had negotiated with her respecting the property, then the commission of five per cent of the sale price is due by the defendant. It matters not that the formal *15 act of sale was passed beyond the forty-five-day period, as it is not disputed that the preliminary agreement between Mrs. Graci and LaNasa had been entered into well within the forty-five-day period. Plaintiff’s contract protected it against any agreement to sell made within that specific length of time after the termination of the agency, and the delay in passing the act of sale cannot be said to have affected plaintiff’s rights. Zollinger v. Gust, La.App., 192 So. 132; Harvey v. Winters, 1 La.App. 383; Viguerie v. Mathes, 10 La.App. 246, 120 So. 542; Wolf v. Casamento, La.App., 185 So. 537.
The evidence shows that before defendant had listed the property with plaintiff, Mrs. Graci called plaintiff’s office, presumably by telephone, stating that she understood that LaNasa’s property was for sale and that she was interested and wanted to submit an offer to buy it. After plaintiff secured the agency contract from defendant, plaintiff’s Paul Caruso called to see Mrs. Graci, but was told by her that she would not discuss buying the property until she first had an opportunity to consult with her son who handled her business affairs. Eric Graci later called at plaintiff’s office and made a written offer to buy the property for $4,000, but the offer was rejected by LaNasa. About a week or two later, Graci returned to plaintiff’s office, and after calling his mother by telephone therefrom, submitted another offer to buy the property for $4,500. This offer too was rejected by LaNasa. About a week afterward, Graci called at plaintiff’s office and asked to be allowed to see the listing contract, he stating that he was interested in knowing the measurements of the property. Although Graci promised to call at plaintiff’s office later, he never did so.
Both Mrs. Graci and her son appeared as defense witnesses, the former testifying that she had nothing to do with the two purchase offers made by her son. She denied that he acted as her agent and also denied that she had ever called plaintiff’s office by telephone or made any inquiries about the property. Graci denied that he submitted the offers for the account of his mother and maintains that in making the offers he had acted on his own behalf. LaNasa testified that he had known Mrs. Graci for many years and that he had been negotiating with her for the sale of the property for about five years, but that they could never agree on a price. LaNasa says that after his contract with plaintiff had expired, Mrs. Graci communicated with him and that he went to see her at her home where the agreement of sale was entered into.
Thus the case must turn solely on a question of fact. The trial judge resolved the matter favorably to plaintiff believing testimony to the effect that plaintiff had quoted the property to Mrs. Graci and had negotiated with her. There is nothing in the record which tends to indicate in any way that there is manifest error in the judgment. It occurs to us that the judgment is eminently correct, for the record clearly reveals that at times Graci would act as his mother’s agent and that she relied to a considerable extent on his advice and judgment in matters pertaining to real estate. We feel sure that Graci submitted the two offers to purchase after a full discussion and understanding with Mrs. Graci, and if it can be said that the offers were not submitted on her behalf, she knew all about them and was cognizant of the price of the property as quoted by plaintiff. While Graci denies that he knew his mother had contracted to purchase the property, he admits that after the purchase agreement had been entered into, he carried the deposit binding the sale to LaNasa. We believe that the agreement of sale was purposely withheld by the parties until after plaintiff’s contract had expired with the idea that LaNasa would have no commission to pay and thaj: Mrs. Graci could buy the property for a cheaper price.
Plaintiff is clearly entitled to its commission as the sale was made prior to the expiration of the forty-five-day period provided for in the contract of employment; the sale had its foundation on the efforts put forth by plaintiff in endeavoring, as LaNasa’s agent, to make a sale to the ulti *16 mate purchaser and on the negotiations previously had between plaintiff and Eric Graci, of which both LaNasa and Mrs. Graci were certainly cognizant.
In the opinion in Cruse v. Bruscato, La. App., 28 So.2d 56, 58, decided by our Brothers of the Second Circuit, is to be found this pertinent observation:
“The reports of appellate court decisions of this State teem with similar cases and as we said in the case of Jeter & Monroe v. Daniels [La.App.], 25 So.2d 911, 912: ‘Down through the years, as shown by the reported cases, beginning with Gottschalk v. Jennings, 1 La.Ann. 5, 45 Am.Dec. 70, to the present, people have sought to reap the benefits of the efforts of real estate brokers without paying them for their work. In every case where the broker has procured the purchaser, the courts have awarded judgment.’ ”
See also Zollinger v. Gust, supra; Dew v. Hunter, La.App., 66 So.2d 400.
The judgment appealed from will be affirmed.
Affirmed.