CHEHARDY, Judge.
Plaintiff real estate brokers appeal from the district court’s dismissal of their suit for a commission on a sale of real estate. Finding, as did the district court, that plaintiffs were not the procuring cause of the sale, we affirm. The district court’s reasons for judgment were thorough and well-written, therefore we adopt them as our opinion.
“Plaintiffs, Barry Katz and W. Michael Sims, brought this suit for a realtors’ commission which they claim was earned as a result of efforts leading to sale of the premises formerly known as the Louisiana Racquetball & Health Club and adjacent land.
“On July 8, 1980, the defendants, Catha and Louisiana Racquetball & Health Club, Inc., signed a specific listing agreement with the plaintiff realtor listing the club, facility and the land on which the club was located for sale at the price of $1,950,000.00. There was conflicting testimony as to exactly which parcels of land were included in the listing agreement. However, after close re *605 view of the testimony elicited at trial, it is the finding of this Court that the agreement granted plaintiffs the exclusive right to sell only the club facility, the land upon which the club was physically located and the lifetime membership contracts. The testimony of defendant, Catha, Ms. Betsey Teuton, former director of the Kenner YMCA, and the testimony of plaintiff, Sims himself, bear out the fact that the adjacent tract of land approximating 2V2 acres was not included under the specific listing agreement. It is, however, noted by the Court that this 2⅝ acre parcel was included in the eventual sale negotiated between the defendants.
“The specific listing agreement expired of its own terms on January 8, 1981; it was extended by agreement of the defendant, Catha, and plaintiffs for an additional six months or until July 8, 1981. The contract specifically provides that the terms of the agreement are to apply only in the event the property is sold to the YMCA.
“The evidence reveals that any contractual relations between the plaintiffs and the defendants ended on July 8, 1981. However, plaintiffs presented testimony to the Court that notwithstanding the fact that they had no contractual arrangement with the YMCA, they persisted to consummate a deal between the parties.
“Plaintiff, Sims, testified that he attempted to get a second extension to no avail. Plaintiff, Katz, admitted under cross-examination that even though he knew their legal authority to sell the property for the defendants was the listing agreement which had expired on July 8, 1981, he encouraged Sims to continue trying to make the sale. Clearly, under these facts plaintiff is not entitled to recover on the basis of the specific listing agreement in question. The terms of the listing agreement had expired prior to the consummation of the deal.
“In the alternative, plaintiffs seek to recover the real estate commission under a quantum meruit theory. Plaintiffs contend that although the contract had expired, they were totally responsible for bringing the seller and the purchaser together, and were thusly the ‘procuring cause’ of the sale.
“On this point, it is well-settled in our law, that a realtor is entitled to a commission, even though the sale is consummated after termination of the agency contract, only if the realtor was the procuring cause of the final sale. Munson v. Aiello, 199 So.2d 577 (La.App. 1 Cir.1967); Searcy v. Jacobs, 151 So.2d 166 (La.App. 4 Cir.1963); Sleet v. Williams, 291 So.2d 495 (La.App. 3 Cir.1974).
“Procuring cause refers to the efforts of a broker in introducing or interesting a purchaser, and means that negotiations eventually leading to a sale must be the result of some active effort of the broker. Womack Agencies, Inc. v. Fisher, 86 So.2d 732 (La.App. 1 Cir.1956). However, the mere fact that a sale may have been in some way aided by the previous attempts of the broker does not of itself entitle the broker to a commission. Bullís & Thomas v. Calvert, [162 La. 378] 110 So. 621 (La.1926).
“A broker is the procuring cause only if the broker is the cause originating or setting in motion a series of events which, without break in their continuity, results in an ultimate agreement between the principal and prospective contracting party. Cramer v. Guercio, 331 So.2d 550 (La.App. 1 Cir.1976).
“A review of the evidence presented at trial convinces this Court that the plaintiffs were not the ones who set in motion an uninterrupted series of events which resulted in the ultimate sale or procurement of the purchaser ready, willing and able to buy on the vendors’ terms.
“Defendant, Catha, testified that after July 8, 1981, negotiations with the YMCA ceased completely. This fact was corroborated by the testimony of Ms. Betsey Teuton, Mr. [Oscar] Boots Hoffman [and] Mr. Ralph Fontcuberta, and is further corroborated by defendants’ in globo exhibit D-2 consisting of the min *606 utes of the [YMCA] Board of Managers’ meetings from January 12,1981, through December 21, 1982.
“Ms. Teuton testified that at the time of the listing agreement and through November, 1981, she was the executive director of the Kenner YMCA. She admitted meeting with plaintiffs but that the YMCA did not have any funds to offer a cash purchase, and were only interested in proposing a ‘performance-type sale.’ Specifically, the payment of the purchase price based upon the collected membership dues by the YMCA. This was rejected by Catha, as evidenced by his testimony. Ms. Teuton testified that after finding out about Catha’s rejection she felt the deal with Catha was dead early in the summer of 1981. She further testified that when these negotiations ceased with the plaintiffs and Catha, the YMCA began to look for other sites to purchase.
“Defendants also offered the testimony of Mr. Boots Hoffman, formerly employed as a director with the YMCA of Metro New Orleans. His testimony corroborated that of the defendant, Catha, and Ms. Teuton to the effect that the negotiations for the acquisition of the club had broken off. He testified that the termination was based on the lack of funds and that after the termination he had no further negotiations with plaintiffs.
“Mr. Ralph Fontcuberta, a board member of the YMCA from 1980-82, testified that plaintiffs had nothing to do with negotiating the terms of the sale. He stated that he discussed the purchase of the club with Catha for the first time sometime in 1982 when the two men were on a trip together. Fontcuberta testified that he did receive a letter from plaintiff, W. Michael Sims, dated November 23, 1982, as evidenced by defendants’ exhibit D-3. In his letter plaintiff, Sims, acknowledges that his meetings with Catha and the YMCA representatives had ceased and that ‘all was quiet’ until November, 1982, when he learned of the acquisition of the club by the YMCA through the newspaper. He further acknowledges that he had ‘very little to do with the end result.’
“Finally, defendants offered the testimony of Rev. George Fischer, current executive director of the Kenner YMCA. The minutes, Exhibit D-2, corroborate that Mr. Fischer became the executive director of the Kenner YMCA on November 10, 1981. Although plaintiffs assert that negotiations continued through their efforts even after the expiration of the listing agreement, Mr. Fischer testified that he had never conducted any negotiations with the plaintiffs for purchase of the Catha property and in fact, had not previously met them. This testimony was uncontradicted at trial.
“The evidence indicates that negotiations for the acquisition of the club terminated during the period of the extension of the listing agreement. Plaintiff introduced into evidence the eventual purchase agreement perfected on November 2, 1982, some seventeen (17) months after the expiration of the listing agreement (Exhibit P-4). The minutes of the Board of Managers support the fact that there was no contact and no negotiations with defendant, Catha, until approximately April of 1982, a period of almost eight (8) months from the expiration of the agreement.
“Accordingly, it is the finding of this Court that plaintiffs are not entitled to any commission whatsoever under the facts developed at trial. The facts clearly establish that the specific listing agreement had expired, negotiations between Catha and the YMCA had ended and were not reinstituted until a later date and that plaintiffs took no part in any renewed negotiations. It is the conclusion of this Court that the sale was not the result of some active effort of the plaintiffs, but instead resulted from the combined efforts of purchaser and seller. Plaintiffs were not the procuring cause of the eventual sale and therefore are not entitled to any commission from said sale.”
*607 The trial court’s conclusion that Katz and Sims were not the procuring cause of the sale is a factual finding, which may not be reversed unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We find no manifest error in the district court’s conclusions; rather, those conclusions are well-supported by the evidence. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For the foregoing reasons, the judgment of the district court is affirmed. Appellants are to pay all costs of this appeal.
AFFIRMED.