## GOTTSCHALK v. JENNINGS et al.

Defendants employed plaintiff, a broker, to sell certain property. Plaintiff communicated to them the name of a person who offered to purchase, but at a price less than defendants asked. The latter rejected the offer and discharged the broker; but, shortly after, through another agent, sold the property to the person whose name was communicated by plaintiff, and for the price originally offered by him. *Held,* that defendants could not, by discharging the plaintiff and consummating the negotiation through another, deprive him of his right to compensation for services which eventually enured to their benefit.

As a general rule, the whole service or duty must be performed, before an agent can claim any commissions; but cases may occur in which he will be entitled to a remuneration for his services in proportion to what he has done, although the business be not concluded, as where its completion was prevented by the act of the principal.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. Plaintiff claimed of defendants $396, alleging that he was employed by them as a broker to sell certain real estate; that he found a purchaser, who offered $40,000 for the property, but that defendants would not, at that time, accept the offer; that, shortly after, they accepted the offer which had been originally obtained through plaintiff's exertions, and sold the property to *Mercer*, the purchaser thus obtained, for the sum of $40,000, less the discount; that plaintiff's services were well worth the amount claimed, to wit, one per cent on the price; and that one per cent is the brokerage usually paid for such services. The defendants answered by a general denial.

The sale of the property to *Mercer*, for $40,000, was proved. *George Gottschalk*, a witness for plaintiff, proved that the latter had been employed to sell the property; that defendants, two or three weeks before the sale, had declined to accept an offer of $40,000, alleging that they could obtain more. *Hewes* deposed that *Mercer* had called at his office to obtain information about the property, which had once been owned by witness; that they went together to see *Lauve*, one of the defendants; that witness told *Lauve* that he thought he was to give him the selling of the property, when *Lauve* replied that he had authorized plaintiff to sell it, but that he would get the plan of the property from him, and give it to witness; that some time after, he did so, and, on the 1st April, witness sold it to *Mercer* for $40,000, and received a commission of one per cent for the sale. Witness understood from *Lauve* that he would satisfy plaintiff, as he had declined to act least he should interfere with him. Defendants asked $45,000. They stated, at the time of placing the plan in witness' hands, this to be the least they would take. Witness was engaged during two or three weeks in negotiating with *Mercer*. *Lauve* stated to witness that plaintiff had named *Mercer* as the person who would give $40,000 for the property. *Lauve* said that he would satisfy the plaintiff, but that his services would be at an end as soon as he should take the plan from him. *Saul*, a witness for defendants, deposed that his services had been solicited by *Jennings* in effecting a sale to *Mercer*, and that he had received from *Jennings* a commission of one per cent for his assistance. *Mercer* testified that he purchased the property; that it was first offered to him by plaintiff, but that, after some negotiations, he declined to buy. He made no distinct offer—plaintiff asked $50,000. He found the price too high, and considered the negotiation at an end. He does not recollect having made any offer; may have mentioned $40,000 as a price beyond which he

would not go.   He purchased at that price.   Plaintiff was the first person who came to him about the property ; he called two or three times, and showed him the plan of it.   After the negotiation was considered by him as at an end, he met *Saul*, who suggested a mode by which the notes, secured by mortgage on the property, might be discounted, which was an inducement to make the purchase. Pending the negotiation with plaintiff, witness called to see *Hewes*, who formerly owned the property.   *Hewes* said that he also was authorized to sell it, but, understanding that an offer had been first made to the plaintiff, he said that he would have nothing to do with the business.   After the conversation with *Saul*, *Hewes* wrote to witness, offering the property for the price which he had mentioned to plaintiff as the *maximum* he would give.   Witness afterwards purchased the property for that price.

The court below gave judgment for the plaintiff.   The defendants appealed.
*Elwyn*, for the plaintiff.   *Vason*, for the defendants, cited *Blanc* v. *Improvement Bank*, 2 Robinson, 63.   *Didion* v. *Duralde*, Ibid. 163.

The judgment of the court was delivered by

SLIDELL, J.   The defendants were owners of certain real estate.   They desired to sell it, and employed the plaintiff, a broker, to procure a purchaser.   The plaintiff offered the property to *Mercer* at $50,000 ; *Mercer* made an offer of $40,000, or stated that amount as his *maximum*.   They had several interviews, the broker explaining the character of the property by exhibiting the plans, etc. ; but no bargain was concluded by *Gottschalk*.   Pending the negotiation between plaintiff and *Mercer*, *Mercer* called on *Hewes*, who had once owned the property. *Hewes* stated that he also was charged with the sale of the property ; but on being informed that *Gottschalk* had offered it to *Mercer*, *Hewes* said he would not interfere.   Subsequently, however, the defendants withdrew the plan from *Gottschalk's* hands, and sent *Hewes* to *Mercer*, and by negotiations through *Hewes* and *Saul*, who, it seems, represented a mortgage creditor upon the property, the sale was soon after closed with *Mercer*, at the same price which *Mercer* originally offered, or stated as his *maximum*, to *Gottschalk*.

It is argued by the counsel for defendants that *Gottschalk* is not entitled to his commission, because the sale was not concluded by him ; that the negotiation through *Gottschalk* terminated unsuccessfully ; and that the bargain was accomplished through the efforts of *Hewes* and *Saul*.

The cases of *Blanc* and of *Didion*, reported in 2 Robinson, are cited by the defendants.   The former Supreme Court then decided that a broker can claim no compensation unless a bargain be effected.   In the case of *Blanc*, it appears that he was employed to obtain for the Improvement Bank the negotiation of a loan of three millions of francs in Europe, and was, by the terms of a written agreement, to receive a certain commission, if the loan should be effected.   The negotiation was never effected.   So, in the case of *Didion*, the plaintiff was employed to sell a piece of land.   The sale was never effected.   In both cases, the court held that no compensation could be allowed.

These decisions do not cover the present case.   Here the bargain, to which the attention of *Mercer* had been first drawn by *Gottschalk*, was soon after consummated at the very price at which *Mercer* made an offer to him.

An examination of the testimony satisfies us that the judge of the Commercial Court correctly considered *Gottschalk* as an efficient instrument in bringing about the sale.

After he had thus rendered services, which eventually enured to the advantage of the defendants, they could not deprive him of all compensation by withdraw-

ing the plan from his hands, discharging him, and consummating the negotiation through other agents. *Hewes*, one of these agents, very properly took this view of the case, manifested a delicacy as to taking the business out of *Gottschalk's* hands, and appears to have been induced to do so by the declaration of one of the defendants, that plaintiff should be satisfied. .

GOTTSCHALK
*v.*
JENNINGS.

The defendants have received advantage from the services of *Gottschalk*, and they ought to pay for them. The general rule of law as to commissions is, that the whole service or duty must be performed, before the right to any commission attaches; for an agent must complete the thing required of him before he is entitled to charge for it. But cases may occur, in which an agent may be entitled to a remuneration for his services, in proportion to what he has done, although he has not completed the business. See Story on Agency, 338. *Hammond* v. *Holiday*, 1 Carrington & Payne, 429. We consider this such a case. Here the entire performance by plaintiff was prevented by the act of the defendants. They took the business out of his hands, entrusted it to others, and soon after the bargain with *Mercer* was closed.

As to the quantum of remuneration, we see no error in the decree of the court below.

*Judgment affirmed.*