### SOLLIE v. PEOPLES BANK & TRUST CO.
#### No. 5977.

Court of Appeal of Louisiana.
Second Circuit.

Feb. 7, 1940.

R. D. Watkins, of Minden, for appellant.

C. B. Prothro, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff sues to recover realtor's commission alleged to be due him on the price of sale of a lot with improvements thereon, formerly owned by defendant, in the City of Shreveport. The defense to the action is that the sale of the property was consummated through defendant's own efforts, without the aid or assistance of plaintiff.

The lower court gave judgment for plaintiff, and defendant, feeling aggrieved, appealed to this court.

The facts of the case are not in serious dispute.

Plaintiff is a licensed realtor in the City of Shreveport. For several years he attended to the leasing of said property for defendant and collected rents therefrom on a commission basis. In the early part of the year 1938, defendant gave plaintiff the exclusive right to offer the property for sale for a price of $3,500. No purchaser was found at this price and on May 16, 1938, the price was reduced to $3,250, and thereafter reduced to $3,000. In the meantime substantial repairs were made to the residence by defendant, which were supervised by plaintiff without charge. These were deemed necessary as a condition precedent to a satisfactory sale.

Plaintiff, after being authorized to find a purchaser for the property, inserted several "for sale" ads in local papers and also posted a fairly large sign on the premises containing the words "for sale" thereon.

In the month of June, 1938, Mr. K. Campbell, a resident of the City of Shreveport, was in the market to purchase a residence for his son. His wife, after reading plaintiff's ad in the papers, suggested to Mr. Campbell that the property might suit them. He and his wife visited the property, inspected it, and he then searched the conveyance records of the parish to determine the identity of the owner. He there learned that it belonged

to defendant. Nothing whatever was said to plaintiff on the subject. Campbell, in the latter part of June, drove over to Minden, defendant's domicile, and there contacted its president with the view of purchasing the property. No sale was then closed, however, it is evident that defendant's president considered Campbell a "likely prospect" because on July 2nd he wrote plaintiff withdrawing the exclusive listing of the property with him, and, inter alia, said:

"* *· * We may be able to sell it ourselves or we may be able to sell it through some other source. We know that you have made every effort to find a buyer for this property and we will be glad for you to continue your efforts along this line and if you can get a proposition at $3,-000.00, submit same to us.

"It is our understanding that from this date on if you sell the property you will receive a commission on same, but if we sell it ourselves or through some other source you will not be entitled to any commission.

"Thanking you for your past efforts and hoping that you may yet sell the property for us * * *."

Plaintiff denies that this letter reached him. We deem it unimportant to a correct solution of the issue involved whether the letter was received or not.

On or about August 8th, Campbell again went to Minden to further discuss with defendant the purchase of the property, and on that date plaintiff was advised by letter from defendant's president that the terms of a sale to Campbell had been agreed upon and that the title papers would soon be signed. On August 19th, defendant wrote plaintiff that the deed to the property had been signed and suggested that steps be taken to deliver possession promptly to Campbell. A few days thereafter, plaintiff, by letter, made demand on defendant for the customary commission of five per cent (5%) of the sale price. Defendant declined to pay it.

The record is conclusive that it was through plaintiff's efforts as realtor that Campbell learned that defendant's property was for sale and became interested in purchasing it. For reasons best known to him, he sought to circumvent plaintiff's agency and to deal directly with the owner. A sale was closed with defendant, the owner, for the same price at which plaintiff was lastly authorized to sell. It is significant that within a day or two following Campbell's first trip to Minden to see defendant about purchasing the property, defendant's president wrote plaintiff that the exclusive right to sell the property was withdrawn, and in the letter of withdrawal, he also said: "We may be able to sell it ourselves * * *."

As a witness, defendant's president, when asked if he did not withdraw the exclusive listing from plaintiff immediately after he had a "nibble" from a prospective purchaser (Campbell), replied, "It probably looked that way." He qualified this answer by adding that he thought he would close a sale of the property with a man by the name of Cox.

There is no doubt that plaintiff did all, or practically all, that a broker would be expected to do to find a purchaser. In a city of the size of Shreveport, the most effective and the customary course to pursue in such a case is by advertising in local papers and placing a "for sale" sign on the premises. Plaintiff did this. He incurred expenses in excess of $30 in doing so. Had it not been for these efforts, it is extremely doubtful if Mr. Campbell would have known anything about the property or that it was for sale. He became interested in the property and approached defendant with the view of buying it prior to the mailing of the letter of July 2nd, withdrawing from plaintiff the exclusive listing. The status of plaintiff's rights as regards the commission, in case of sale to Campbell for $3,000, then became fixed, and the attempt to alter the original agreement through the letter of July 2nd was without effect.

Through plaintiff's efforts a purchaser was found who paid the price the owner was willing to accept, the same price plaintiff was authorized to close a sale for. The owner and purchaser were brought together through plaintiff's efforts. He was the procuring cause of the sale. The fact that the sale was afterward consummated between the owner and purchaser, without plaintiff's presence or knowledge, has no material bearing upon defendant's liability for payment of the commission. Kaufman Agency v. Viccellio, et al., La. App., 174 So. 709–711; and cases therein cited.

The rule prevailing generally throughout the country is well stated in 4 R.C.L.

page 320, par. 58, as follows: "In many cases the question has arisen as to whether or not there has been a performance of the contract on the broker's part, where the transaction contemplated has been negotiated or closed by the principal himself. The general rule deducible from the decisions upon the question would seem to be that if there is nothing peculiar in the contract of employment it is not necessary that the broker should negotiate the sale when he has found, or procured, or if he has introduced, or given the name of, a purchaser who is able, ready, and willing to purchase the property upon the terms named by the principal, and the principal has entered into negotiations with such purchaser, and concluded a sale with him; and in such cases the broker has performed his contract, and is entitled to his commissions."

The rule is tersely given in 12 C.J. Secundum, page 215, par. 93, as follows: "Provided he is the procuring cause of the transaction, a broker is entitled to a commission on a transaction with a customer procured by him, even though the final negotiations are conducted or the transaction is closed by the principal personally."

The Supreme Court of this state has, in several cases, recognized the rule embodied in the quotations, supra, and enforced it in proper cases. In Grace Realty Company v. Peytavin Planting Company, 156 La. 93–96, 97, 100 So. 62, 63, 43 A.L.R. 1096, dissertating upon facts to which said rule was applicable, said:

"It is well settled that where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission.

"This rule is supported by numerous authorities, upon the ground that the broker is, in such a case, really the moving cause of the sale, as he has brought the parties together and thereby procured a purchaser and performed his contract which was contingent upon his success. Hoadley v. Savings Bank of Danbury, 71 Conn. 599, 42 A. 667, 44 L.R.A. 350, 351, note, citing numerous authorities."

Many cases from other states are cited to support the rule. The court, in passing, also said: "The decisions above quoted, when considered as a whole, are based, not only upon the principle that in such cases the agent is considered as the proximate or procuring cause of the sale, but also upon the equitable maxim that the principal shall not be permitted to enrich himself at the expense of the agent or broker, whose services have inured to his benefit."

For the reasons herein assigned, the judgment appealed from is affirmed with costs.