ELLIS, Judge.
Plaintiff, a real estate broker, appeals from a judgment dismissing his suit for a commission.
Foulks, the real estate agent, was given a contract by the defendant Richardson as an exclusive agent to sell the latter’s 120-acre Brock Farm for $18,500 of which $4,000 was to be a cash down payment, and further agreeing to pay Foulks $1,000 commission if the property was sold. This contract by its terms was to expire automatically without notice 30 days from date with the further stipulation, “I agree not to withdraw same if a sale is pending.” Foulks immediately advertised the property in “The Times Picayune” of New Orleans, the Baton Rouge papers and the local papers, and made personal contacts among whom was James D. Jordan, the eventual purchaser from Richardson of the property.
The testimony shows clearly that Foulks entered into negotiations with Jordan prior *336 to the expiration date of the contract and stated that he went to the latter’s home twice and came over to see the defendant “by appointment and missed him both times.” Foulks was unable to bring- Jordan and the defendant Richardson together and realizing that the time was getting short, that is, the expiration date, of the contract which was November 1, 1952, he called Richardson on the telephone “before the first of the month, time was getting short,” and Richardson promised to protect him on his prospect, Jordan. There is no conflict on this point, in fact, Richardson admitted several times in his testimony that he told Foulks he would protect him on his prospect but insisted that that was based upon the provision of the written contract that he secure a $4,000 down payment. The written contract expired on November 1, 1952, and in accordance with Richardson’s promise to protect him on his prospect, Foulks, during the first week of November finally got Jordan and Richardson together to discuss the. proposed sale. The testimony shows that Jordan was anxious to buy this property, but realizing that it needed some improvements he could only make a down payment of $3,000 instead of the $4,000 and Richardson refused this offer. Richardson then, apparently during the next week or shortly thereafter, notified Foulks that since he could not get Jordan to pay $4,000 down payment the contract, apparently the verbal one, was at an end, and then, on November 18th, or within 10 or 11 days after he refused to accept a $3,000 down payment, he, Richardson, sold the property to Jordan for $23,355, spread out over 16 years, of which' amount $1,500 represented the down payment. Richardson testified that the $23,500, or $4,555 more, that he received was for the land, that the tractor and other equipment were not included in this consideration.
Upon learning of the sale,- Foulks demanded his $1,000 commission and Richardson offered him $250 “because the down payment was so small he didn’t want to give all that to me on commission.”
Richardson’s weak excuse for not carrying out his promise to protect Foulks is shown in his testimony under cross-examination when he was asked the following question and gave the following answer:
“Q. Did you ever promise to protect Mr. Foulks in any agreement relative to the sale of that place after the first of November, 1952? A. Yes, sir, if he would bring me an agreeable contract or down payment, and I would protect him on it, and we would start all over since this one had expired.”
In the opinion of the lower court it was held that the ultimate purchaser was not introduced by the real estate broker to the seller until after the expiration date of the contract which defendant had specifically refused to renew in advance of such first meeting. This statement is based upon the written contract which expired on November 1, 1952, but the error in the holding of the District Court is the failure to recognize the proven fact that the defendant had entered into a new oral contract with Foulks, the real estate broker. Therefore, under this interpretation the ultimate purchaser was introduced by Foulks to Richardson prior to the expiration of the oral contract. While it is true that this suit is filed upon the written contract, we have the sworn testimony of Foulks and of Richardson, without objection, to the effect that Foulks had called Richardson just before November 1, 1952, the expiration date of the written contract, for the very reason that he realized that it would expire, and Richardson at this time agreed to protect Foulks on his prospect, Jordan. By virtue of the new admitted verbal contract Foulks brought Jordan to Richardson during the first week of November, and the prospective sale of the property was discussed. In other words, Richardson’s actions in discussing the sale with Foulks and Jordan is further proof of the verbal agreement. Richardson was informed that Jordan could pay $3,000 cash and yet, he gives no satisfactory explanation in his testimony as to why within 12 or 14 days after refusing to sell the property on the terms agreed, with a reduction of $1,000 in the down payment, he then turns around and secures $4,555 more for the land from Jordan and accepts $2,500 less, or a $1,500 *337 down payment. He seeks to escape payment of the commission on the ground that Foulks, the real estate agent, failed to get a $4,000 down payment from Jordan, and he then told Foulks that his contract was at an end, and after two weeks he sells the property to Jordan at a much more advantageous price but with a $2,500 reduction in the cash down payment.
Therefore, the written contract which expired on November 1, 1952, is not to be considered other than it fixed the price and terms for which Foulks was authorized to secure a purchaser, as well as the commission to be paid. The contract upon which Richardson should pay the commission to Foulks is the verbal contract which he admitted under oath to have made shortly prior to the expiration date of the written contract. Any contract admitted under oath is proven. Therefore, under the proven facts in the present case, the plaintiff Foulks procured the purchaser, Jordan, within the verbal contract granted to him by the defendant Richardson after the expiration date of the written contract. As stated, Richardson admitted this verbal contract under oath several times in his testimony. Further, it seems undeniable that plaintiff’s active efforts were a procuring cause of this sale; as stated by this Court in Womack Agencies, Inc. v. Fisher, La. App., 86 So.2d 732, “procuring cause” referred to the efforts of the broker in introducing, producing, finding and interesting a purchaser, and means that negotiations which eventually lead to a sale must be the result of some active effort of the procurer. Lehmann v. Howard, La.App., 49 So.2d 453; 34 Words and Phrases, Pocket Part, Procuring Cause.
It is undenied that plaintiff advertised the property extensively, that is, in the Baton Rouge, New Orleans and local papers, and made personal contacts, one of whom was Jordan, showed him the property and introduced and produced him to Richardson, the defendant, and interested him to such an extent that although he was only asked $18,500 originally for the pur-chase of the property under the terms of the plaintiff’s contract, that within two weeks after Richardson says he notified the plaintiff that their contract was at an end, he gave $4,555 more for the property and instead of having to pay $4,000 cash down payment was allowed to pay $1,500 with sixteen years to pay the balance. Under these facts the negotiations which eventually led to a sale of this property to Jordan were the result of the active efforts of the plaintiff. The defendant admits he never knew Jordan until Foulks introduced him.
The mere fact that Richardson decided to accept $1,500 down payment rather than $4,000 down payment does not and cannot under the well-settled law deprive the plaintiff of his earned commission. This law is fully stated in the Womack opinion as follows:
Actually, it seems well settled that “Although agreement to sell is reached with the, ultimate purchaser after the final expiration date of the contract a'S agent to sell the property (in this case, October 22nd), nevertheless the seller is liable to the agent for the latter’s commission if the agent was the procuring cause of the sale, and if the sale was the direct and continuous result of negotiations entered into while the contract was in force, even though the selling price be lower than that listed as minimum in the contract, Gottschalk v. Jennings, 1 La.Ann. 5; Corbitt v. Robinson, La.App., 53 So.2d 259; Sollie v. Peoples Bank & Trust Co., La. App., 194 So. 116; Harvey v. Winters, 1 La.App. 383. In all of these cases a broker was allowed to recover his fee although the seller did not reach agreement with the purchaser until after the technical expiration date of the’agent’s contract. As set forth in Harvey v. Winters, the rule is based upon equity and fairness, as otherwise the parties to the sale can easily avoid compensating the broker who brought them together to the verge of the sale *338 by tacitly, or at least unprovably, agreeing to delay acceptance until after the broker's contract expires.[1]
Applying the above statement of the law, the plaintiff in this case was the procuring cause of the sale, which was the direct and continuous result shown by the facts in the case of negotiations entered into while the verbal contract was in force, although Richardson did not reach a final agreement with Jordan until after he says he discharged Foulks or notified him that his verbal contract was at an end or “until after the technical expiration date of the agent’s contract.” It would be inequitable and unfair to deny plaintiff his commission under the facts in this case. To do so would be doing what the court in Harvey v. Winters, supra, stated should not be allowed, viz., that the parties to the sale could easily avoid compensating the broker who brought them together to the verge of the sale by tacitly or at least unprovably agreeing to delay acceptance until after the broker’s contract expires, in this case until after Richardson had discharged plaintiff. In the present case the lower court held that the plaintiff had not within the time limit produced a person ready, willing and able to purchase on the owner’s terms. The lower court fell into error in not accepting as a contract the verbal agreement by Richardson which he admitted under oath to protect Foulks on his prospect, Jordan, and it was based upon the promise and agreement by Richardson that Foulks introduced and produced Jordan to Richardson. Can it be said that a broker who produces a person ready, willing and able to purchase for $18,500 and $3,000 cash down payment, but who is allowed by the owner, within two weeks after the technical expiration of the contract, to purchase for a cash down payment of $1,500 and a total price of $23,355, is not entitled to his commission? We think not.
Counsel for plaintiff relies upon the case of Viguerie v. Mathes, 10 La.App. 246, 120 So. 542, 543, which we believe is controlling. The Court in this case stated:
“The question for consideration here is whether the original contract for the purchase of defendant’s property had been abandoned as defendant contends, or whether it had only been amended as a result of negotiations between the owner and the purchaser, continuing beyond the 45-day period mentioned in the contract.
* * * * * *
“Under the circumstances, we are of the opinion that the plaintiff, Viguerie, was the procuring cause of the sale and is entitled to his commission. The fact that there was some difference between the original offer procured by plaintiff, and that afterwards accepted by the defendant, is immaterial, since the basis of the final transaction, by which this property was sold, was the original offer made by Ritchie and procured by plaintiff.”
It might be argued that plaintiff could only recover under quantum meruit. There might be some merit in this argument were it not for the fact that the defendant Richardson admitted under oath without objection that he verbally agreed to protect the plaintiff Foulks with regard to his prospect, Jordan, the eventual purchaser of the property. Richardson also admitted that he had no objection and expected to pay $1,000 commission had the plaintiff secured a $4,000 down payment from Jordan. There was no difference in the terms of the verbal contract and the *339 written contract insofar as the amount of plaintiff’s commission was concerned. Under the facts in this case and the law applicable, the plaintiff has earned his commission of $1,000.
It is therefore ordered that the judgment of the District Court be reversed and that there be judgment in favor of the plaintiff, Joseph M. Foulks, and against the defendant, Lamar M. Richardson, in the full sum of $1,000 with legal interest from judicial demand until paid.
It is further ordered, adjudged and decreed that the defendant pay all costs.

. “ ‘The reports of appellate court decisions of this State teem with similar cases and as we said in the case of Jeter & Monroe v. Daniels, La.App., 25 So.2d 911, 912: “Down through the years, as shown by the reported cases, beginning with Gottschalk v. Jennings, 1 La.Ann. 5, 45 Am.Dec. 70, to the present, people have sought to reap the benefits of the efforts of real estate brokers without paying them for their work. In every case where the broker has procured the purchaser, the courts have awarded judgment” ’, Cruse v. Bruscate, La.App., 28 So.2d 56, at page 58. See Also Grace Realty Co. v. Peytavin Planting Co., Inc., 156 La. 93, 100 So. 62, 43 A.L.R. 1096.”