100 So.2d 93 (1958)
Mary Phene VETERS
v.
Abraham KRUSHEVSKI.
No. 20994.
Court of Appeal of Louisiana, Orleans.
January 20, 1958.
Writ of Certiorari Denied April 21, 1958.
*94 William J. Daly, New Orleans, for defendant and appellant.
S. Sanford Levy, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
Mary Phene Veters, a real estate broker, sues defendant, Abraham Krushevski, for $1,000, alleging in her petition that about April 25, 1956, the defendant employed her as agent to sell the property 918-920 St. Louis Street in New Orleans; that she showed the property to John Dodt III, and on May 30, 1956, obtained from him a signed offer to purchase the property for $20,000 cash, which offer she submitted to defendant; that defendant declined to accept Dodt's offer, but advised plaintiff that he would sell for $21,000; that on that same day she obtained from Dodt, and submitted to defendant, an offer to buy the property for $21,000 cash; that defendant refused this offer, and on the following morning he contacted Dodt and entered into an agreement of sale whereby he agreed to sell the property to Dodt for the sum of $21,000 cash. Plaintiff avers the agreement of sale between defendant and Dodt resulted directly from her efforts, and that ultimately the formal act of sale by which Dodt took title to the property was passed. Plaintiff further avers that she performed all services for which defendant employed her and is entitled to her real estate broker's commission. She prays for a judgment in the sum of $1,000. It should be mentioned at this point that the amount of the commission allegedly due is 5 per cent of $21,000, or $1,050, but plaintiff waived $50 thereof, thus reducing her claim to the maximum jurisdictional amount of the First City Court of New Orleans.
The gravamen of the defense is that defendant had agreed to buy the property from the record owner; and that whilst he was awaiting the passage of title, the plaintiff and a Mrs. Kroll, who was represented to defendant as a prospective purchaser, inquired as to whether he would be interested in selling the property, and that defendant informed them that he would sell "for about $25,000" cash; that Mrs. Kroll stated she would buy only through an agent, towit: her friend, the plaintiff, and that defendant had no objection to this; that it subsequently became obvious that Mrs. Kroll would not buy, and defendant listed the property for sale with C. J. Tessier, another realtor. Defendant admits plaintiff obtained the $21,000 offer from Dodt, and avers he was willing to accept Dodt's offer provided plaintiff would handle the deal through the agent, C. J. Tessier, the commission on the transaction to be divided equally between plaintiff and Tessier; that plaintiff" refused to negotiate with Tessier or to allow him to participate in the commission; that since plaintiff refused to cooperate with his agent, defendant sold the property to Dodt for $21,000 and paid Tessier the full broker's commission on the sale.
After hearing the case on the merits, the trial court rendered judgment in plaintiff's *95 favor for $737.50, and the defendant appeals. The appellee has filed an answer to the appeal praying that the amount of the judgment be increased to $1,000.
The first and foremost issue in the case is whether defendant employed plaintiff as his agent to sell the property. It is evident that the trial court resolved that issue in plaintiff's favor and held there was a verbal contract of employment, and after carefully analyzing the evidence bearing on the point, we readily conclude that the trial judge was correct. About April 25, 1956, plaintiff and Mrs. Gwendoline Kroll, the latter being the owner of a large number of properties situated in the Vieux Carre, visited 918-920 St. Louis Street, as Mrs. Kroll was anxious to know whether the property was for sale. Defendant was there and represented himself to be the owner. It is not denied, but is in fact conceded, that defendant stated he would sell provided he received "about $25,000"; however, defendant stated he would accept any reasonable offer. Mrs. Kroll states that she made it known to defendant that if she agreed to buy she would do so only through a broker, and both Mrs. Kroll and plaintiff state that defendant thereupon employed plaintiff as agent to sell the property and agreed to pay her a commission if she was instrumental in finding a purchaser. Miss Veters states she asked defendant if he had listed the property for sale with any other agent and that defendant answered in the negative saying: "I appoint you my agent." Defendant admits he agreed to pay plaintiff a commission if she sold the property, but his contention is that there was no listing agreement at all and that he only consented to pay the commission in the event plaintiff could sell the property to her friend, Mrs. Kroll. This attempt on defendant's part to restrict the employment to that extent makes no impression upon us especially in view of his testimony on cross-examination, viz.:
"Q. Mr. Krushevski, did you not tell Miss Veters that you wanted to sell the property before you took title to it, is that not correct?
"A. I said that if she sells it right quickly, because I hadn't taken title yet, if she sold it quickly I would pay her the commission."
Mrs. Kroll, for some reason or other, lost all interest in purchasing the property, but notwithstanding this, plaintiff continued her efforts to find a buyer and submitted the property to several other persons she thought would be interested, whose names appear in her testimony, one of whom was John Dodt III. On May 30, 1956, plaintiff succeeded in obtaining an offer from Dodt to buy the premises for $20,000 cash, but the offer when submitted to the defendant was rejected. Defendant stated to plaintiff that he wanted $21,000 for his property. At the time of the submission of Dodt's offer defendant made no mention to plaintiff that he had listed the property with C. J. Tessier, or any other agent. According to plaintiff, when defendant rejected Dodt's offer for the $20,000, she asked him: "* * * will you assure me if I get Mr. Dodt to sign for twenty-one thousand dollars ($21,000.00) you will accept it * * *?" and that defendant replied: "* * * I'll take it." An offer for $21,000 was secured from Dodt the same day, and plaintiff informed defendant thereof by telephone. This second offer of Dodt's was never accepted and the reason why is clearly set forth in defendant's testimony:
"* * * Well, a few hours later, Miss Veters calls my house and says that she obtained the twenty-one thousand dollar ($21,000.00) offer and I said, `well, that's all right, now let's discuss the details about money, the details' and we started to talk about the commission and I told her * * * the commission would have to be half to Tessier's office and half, of course, to Miss Veters, * * *."
Plaintiff emphatically refused to divide the commission with Tessier, and her testimony *96 is that she not only refused but she warned defendant that if he dealt with Tessier he would possibly make himself liable for the payment of two commissions on the sale.
However, negotiations between Dodt and the defendant were continued without plaintiff's cooperation, as the record shows that Dodt contacted defendant and on the same day, or the next, Dodt went to defendant's home were the parties entered into an agreement of sale for $21,000 cash which Dodt prepared without the intervention of C. J. Tessier. In due course, the transaction was fully consummated by the passage of the formal act of sale.
The record does not clearly show on what date defendant listed his property for sale with C. J. Tessier, but after all we are not concerned with that detail but rather with the fact whether defendant ever informed plaintiff that Tessier was his agent. The record would support the conclusion that defendant never so advised plaintiff at any time during the period she was endeavoring to sell the property by submitting it to several prospective purchasers, including Dodt, nor even at the time of the submission to defendant of Dodt's first offer to purchase. This clearly appears to be a case where an owner listed his property for sale with two real estate brokers and permitted plaintiff, with whom it was first listed, to attempt to find a purchaser without ever being informed or made cognizant of the listing contract defendant had with the other broker.
Unquestionably plaintiff was the procuring cause of the sale of defendant's property, and as defendant had employed her as broker, she was within her rights in refusing to close the deal through the Tessier office, and under the law she is entitled to recover the usual broker's commission which is 5 per cent of the purchase price of $21,000 or $1,050, less the $50 plaintiff remitted for the purpose of reducing the claim to an amount within the jurisdiction of the court in which the suit was filed. It does not appear from the record and we are at a loss to understand why the trial judge gave plaintiff a judgment for only $737.50.
The agreement between plaintiff and defendant was a contract of employment which need not be in writing, but because no term was stated the defendant, perhaps, could have revoked it when it became evident that Mrs. Kroll was no longer interested in buying the property. But he permitted plaintiff to continue submitting the property to prospective purchasers and to procure the two offers from Dodt, all without objection on his part, the effect of which was a complete ratification of what plaintiff had done in his behalf and defendant cannot repudiate the employment.
The decisions of this and other appellate courts are uniform in holding that the agent who has been the procuring cause of the sale is entitled to his commission. Foulks v. Richardson, La.App., 87 So.2d 335; Womack Agencies, Inc., v. Fisher, La.App., 86 So.2d 732; Wright v. Monsour, La.App., 86 So.2d 586; Moore v. Walther, La.App., 66 So.2d 403; Dew v. Hunter, La.App., 66 So.2d 400; Lawrence v. Bailey, La.App., 41 So.2d 474; Isaac v. Dronet, La.App., 31 So.2d 299; Jeter & Monroe v. Daniels, La.App., 25 So.2d 911; White v. Havard, La.App., 25 So.2d 108; Sollie v. Peoples Bank & Trust Co., La.App., 194 So. 116; Blasini v. Charbonnet, 10 La.App. 629, 121 So. 205; Viguerie v. Mathes, 10 La.App. 246, 120 So. 542; Harvey v. Winters, 1 La.App. 383.
The Supreme Court held in Grace Realty Co. v. Peytavin Planting Co., Inc., 156 La. 93, 100 So. 62, 63, 43 A.L.R. 1096, that an owner of property cannot deal with a prospective purchaser procured by an agent and deprive the agent of his commission either by discharging him or by *97 silently ignoring his rights. The opinion in the case contains the following pertinent observations:
"We distinctly held in the Gottschalk case [Gottschalk v. Jennings, 1 La.Ann. 5] that the discharge of the agent who had procured a purchaser, and the closing of the deal with the same purchaser a short time afterwards, through another agent, was an act of bad faith.
"It would be equally an act of bad faith upon the part of the principal in such a case, if the sale should be made personally by him. If brokers could be legally discharged by their principals, shortly after prospective purchasers were found, and the sale could be effected directly by such principals, or through the medium of another agent, to the same purchaser, then Othello's occupation would be gonethere would be no more commissions collected; no more realtors. * * *"
In Howell v. Thompson, La.App., 38 So. 2d 167, 169, the owner requested the broker to reduce his commission which the broker refused to do. Thereupon the owner and the broker's prospective buyer negotiated between themselves and agreed upon a price less than the price quoted to the buyer by the broker. The court found that the broker had produced a party who was interested in purchasing the defendant's property, and that the broker's failure to actually perform the final work of closing the sale was due to the defendant's action in dealing directly with the purchaser. The broker was allowed to recover his commission. The court said:
"* * * Plaintiff produced * * a party who was interested in the purchase of defendant's property, and his failure to actually perform his final work of closing the sale is plainly attributable to the refusal of defendant to continue to deal with plaintiff's agent and to defendant's action in dealing with the purchaser directly.
"The fact that the defendant reduced the price in order to effect the sale does not release defendant from his liability to pay plaintiff a commission on the sale price. * * *"
It is unfortunate that defendant is compelled to pay two commissions for the one sale, but the blame for his dilemma must rest squarely on his shoulders. This case is quite similar to Englemann v. Auderer, 10 La.App. 136, 121 So. 194, 195. We held there that a broker was entitled to his commission on the property sold to a purchaser with whom he had been negotiating, even though the owner had listed his property with another agent and thus exposed himself to liability for two commissions. We quote from the reasons for judgment handed down by the trial judge, which we fully approved, as follows:
"* * * The parties were capable of consenting, did consent and the object of the contract being lawful, it is a perfectly good private law between the parties, and, however unwise, or, however foolish a man may be to enter into such a contract, the courts do not sit to relieve men of the results of their folly, but sit to enforce private as well as public laws."
Defendant's counsel complains of the ruling of the trial judge in refusing to admit into evidence a certain letter written by John C. Dodt III to defendant on May 31, 1956. The trial judge believed the letter was irrelevant. We agree with the ruling because the letter was written by Dodt to defendant, and plaintiff not having been a party thereto certainly cannot be bound by its contents.
Another point raised by the defendant is that at most plaintiff cannot recover more than one-half the amount of the usual commission for the reason that in the $21,000 offer of Dodt, which plaintiff *98 secured, it was stated that the commission was to be equally divided between plaintiff and A. K. Roy, Inc., a firm of real estate agents with whom Dodt was connected. This condition was not placed in the offer for the benefit of defendant as he had no interest in or concern with how the commission was to be divided. Plaintiff explained that the condition was placed in the offer as a courtest to Dodt who was in the employ of the A. K. Roy office When defendant saw fit not to accept the offer, we do not think he can be heard in this suit when seeking to limit plaintiff's commission to one-half because of the recital in the offer.
Therefore, the judgment appealed from is amended by increasing the amount thereof to $1,000, and as thus amended and in all other respects it is affirmed. Defendant-appellant is to pay the costs of appeal.
Amended and Affirmed.