TATE, Judge.
This suit is by a lady realtor for the commissions allegedly due to her arising from the sales of certain lands by defendants to a partnership which is not a party to this suit. Plaintiff’s husband, as head of the community, intervened to assert the community’s rights to recover the commissions allegedly due. This appeal is from judgment dismissing, after trial on the merits, the suit and intervention.
By a written offer subsequently accepted by defendants, the partnership of Bierhorst and Elmer agreed to buy from them the southerly one-fourth of a 263-acre tract in St. Tammany Parish, for the sum of $200 per acre plus one-third of the net profits to be made by the purchaser from the subdivision and/or re-sale thereof. By the written offer so made and accepted, the defendants further granted the purchaser options to purchase the other three-fourths of the land.
Plaintiff’s commission on the first one-fourth sold was paid at the time of the sale thereof in 1953. The present suit is for the commissions allegedly due to plaintiff resulting from defendant’s subsequent three conveyances, pursuant to the options so granted, by which defendants sold the residue of the tract to Bierhorst and Elmer.
Plaintiff’s position, simply stated, is that, having procured a purchaser for defendants’ land, she is entitled to her commission upon the sale thereof. Cf., Foulks v. Richardson, La.App. 1 Cir., 87 So.2d 335. Both she and her husband (who handled the entire transaction for her agency) testified that there was no prior written or oral contract of agency and that there was no discussion whatsoever with defendants as to whether any commission was to be due upon the sales of the remaining three-fourths of the tract, should the purchaser exercise his option to purchase it.
Both plaintiff and her husband stated that their claim for the realtor’s commission *764 rested upon their interpretation of, and what they claim to he their understanding of, the intention of the written offer of the purchaser accepted by defendants, which plaintiff’s husband said he assisted in con-fecting. This written offer, dated July 24, 1953, was accepted in writing by defendants. It is set forth in full as Appendix “I” to this decision.
Under the terms thereof, as will be seen by reference to it, the Bierhorst partnership offered to purchase the southerly quarter of defendants’ tract for the stated consideration. In connection with this offer— as well as certain other provisions such as providing for a deposit by the purchaser should the offer be accepted and for passage of the sale before September 24, 1953 or else forfeiture of the deposit — is found the provision: “If this offer is accepted, seller agrees to pay the agent’s commission of 5%.” Immediately thereafter is found the paragraph: “This offer remains good and irrevocable through July 25, 1953.”
The paragraphs following this then set forth that in consideration for the deposit to be made and the purchase price to be paid, the defendants granted the prospective purchaser options to purchase by fourths, the remainder of the tract, said options to be exercised successively within one, two, and three years respectively, as set out in detail in Appendix I.
Plaintiff’s claim to a realtor’s commissions upon the lands subsequently sold by defendants to Bierhorst and Elmer under the options contained in the agreement is based upon a sentence contained in each option agreement that “The act of sale shall be under the same terms and conditions as hereinabove set forth.” (See portions of option agreements italicized in Appendix I.)
It is argued that one of the requisite “terms and conditions” of the subsequent sales per the options was the payment to plaintiff of a real estate agent’s commission of five per cent of the purchase price, since it had been provided that such a commission would be paid by the seller if the offer to purchase the first fourth of the tract was accepted.
But, in our opinion, upon reading the agreement as a whole, the payment of a realtor’s five per cent commission was no more one of the “terms and condition” required of the subsequent sales under the options, than were the provisions for a 10% deposit of the purchase price or that such subsequent sales be executed before September 24, 1953 — whereas, of course, the options were accepted and sales executed thereunder in 1954, 1955, and 1956 as specifically permitted by the instrument. It seems to us that the provisions concerning a real estate’s commission to be paid by the seller “if this offer is accepted” related only to the purchase price of the first fourth of the tract which was the only property Bier-horst and Elmer offered to buy by the agreement in question.
Should, however, the agreement be considered ambiguous in ■ this respect, then parol evidence may be admitted to explain the intention of the parties to the instrument. Krauss v. Fry, 209 La. 250, 24 So.2d 464; Rudman v. Dupuis, 206 La. 1061, 20 So.2d 363. And thus certain extrinsic evidence, clearly proving that the seller expressly did not agree to pay a realtor’s commission on any lands to be sold subsequently under the options granted, is admissible despite plaintiff’s objection.
Wesley Carroll, the co-defendant who principally had handled the negotiations for the other defendants, testified that he had initially protested to plaintiff’s husband that defendants were not liable for a realtor’s commission even on the first fourth of the tract sold through the acceptance of the Bierhorst and Elmer offer to purchase same, since he had been under the impression during the negotiations that plaintiff’s husband was the agent of the prospective purchaser rather than of defendants-sellers. Carroll further testified that after much discussion he agreed to pay a five per cent *765 realtor’s commission, but specifically only upon the sale of the first fourth of the tract.
The purchasing partner, Bierhorst, and his attorney, who had prepared the instrument in question, testified that the initial draft thereof had under each option agreement therein specifically set forth the defendants’ liability for a realtor’s commission of five per cent; but that upon defendant Carroll’s insistence, the offer finally accepted was revised so as to delete any liability in defendants for realtor’s commissions for subsequent sales under the option agreements. Thus the specific intent of the parties to the instrument in question was that defendants-sellers made themselves liable for a realtor’s commission only upon the land actually sold pursuant to the agreement and not upon that which might subsequently be sold through the exercise of option rights therein granted.
Since plaintiff and her husband themselves admitted that there was no contract or agreement retaining them or providing that they would receive a commission upon the sale of the defendants’ land, except such as provided by the Bierhorst and Elmer offer to purchase said property as above-described, as accepted by defendants; and since we have found that by this latter instrument defendants specifically did not obligate themselves for a realtor’s commission upon any subsequent sales of the land which they granted Bierhorst and Elmer an option to purchase; the District Court, in our opinion, correctly denied recovery of the realtor’s commission sought by this suit.
In view of this disposition upon the merits, it is unnecessary to discuss defendants-appellees’ argument re-urging their exceptions to the intervention as untimely and of no cause of action (which, furthermore, are urged only in brief and are not raised by answer to the appeal or by appeal from the final judgment insofar as it overruled these exceptions).
For the above and foregoing reasons, the judgment is affirmed.
Affirmed.
Appendix I
"Slidell, La., July 24, 1953
“I offer and agree to purchase the southerly one quarter of the 263.23 acres of land in the F. Dubuisson Claim, * * * St. Tammany Parish, Louisiana, * * * [description omitted]. Subj ect to the right-of-way of the public road along the easterly line of the above described property.
“Subject to a reservation by Vendors, their heirs and assigns of one-half of all oil, gas and other minerals, and all rights thereto in, on and under the property to be conveyed.
“The northerly line of this quarter and subsequent quarters to be parallel to the north line of the 263.23 acres. Actual measurements and areas to be determined by survey by H. G. Fritchie, surveyor.
“I offer and agree to pay as the purchase price of the hereinabove described property the price and sum of Two Hundred and no/100 ($200.00) Dollars per acre cash; also to pay and turn over to you one-third of any and all net profits which I might make from the sale or sales of the hereinabove described property. The property is to be sold free and clear of all leases and encumbrances and occupancy is to be given at the passage of the act of sale.
“All paving charges bearing against the property, if any, are to be paid by Vendor, and real estate taxes are to be prorated as of the date of the passage of the act of sale.
“All proper and necessary certificates and revenue stamps are to be paid by the Seller, but I, the Purchaser, to pay the cost of the survey.

“The act of sale is to be passed before the Purchaser's notary on or pi'ior to September 24,1953.

“If the offer is accepted I will deposit with the Gus Baldwin Realty Company immediately in cash 10% of the purchase price amounting to $1,315.00.

*766 “It will be necessary that the seller deliver to me, the purchaser, a good, valid and merchantable title.

“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ispso facto, forfeited, with formality beyond tender of title to purchaser; or the seller may demand specific performance.

“If this offer is accepted, seller agrees to pay the agent’s commission of 5%.

“This offer remains good and irrevocable through luly 25, 1953.

“In consideration of the deposit to be made, together with the subsequent sales price and profit sharing agreement herein-above stipulated, sellers agree to give and grant unto purchaser the following option, to-wit:
“Within one year from the date of the passage of the act of sale purchaser shall have the right and option to acquire from sellers, an additional one-quarter of the 263.23 acres of land hereinabove described, the one-quarter interest to be immediately adjoining the property which I have herein-above agreed to'purchase. The act of sale shall be under the sarnie tenis and conditions as hereinabove set forth.
“In the event this first option is exercised by me I shall then have within one year from the date of the passage of the act of sale covering the property included in the first option, the right, privilege and option to acquire an additional 25% of the above described 263.23 acres. This piece of land, however, to be immediately adjoining the property described in the first option. The act of sale shall be under the same terms and conditions as hereinabove set forth.
In the event this second option is exercised by me I shall then have within one year from the date of the passage of the act of sale covering the property included in the second option, the right, privilege and .option to acquire an additional 25% of the above described 263.23 acres. This piece of land, however, to be immediately adjoining the property described in the second option. The act of sale shall be under the same terms and conditions as herein-above set forth.” (Italics ours.)