JANVIER, Judge.
Plaintiff partnership is engaged in business in New Orleans and the general area surrounding this City as a real estate agent. It charges that the defendants, who were' the owners of two pieces of real estate in the Parish of St. Bernard, fraudulently conspired among themselves and with others to evade payment to plaintiff of a commission which it alleges it earned when, within the period of the listing contracts between it and the defendants, it procured from a prospective purchaser, who was ready, willing and able to buy the properties, offers on prices and terms which the defendants had indicated were acceptable to them.
Plaintiff prayed for judgment for the amount of the commissions against defendants jointly and in solido, together with attorney’s fees, interest and costs.
All of the defendants, except Peter Gallo, to whom we shall later refer, denied that offers, in accordance with the listing contracts between plaintiff and the defendants, were submitted to them.
There was judgment dismissing the suit and plaintiff has appealed.
The plaintiff partnership is represented in these proceedings by one of its members, Paul Caruso.
The two pieces of real estate were adjoining, and it was understood by all that they must be sold together to the same purchaser as it was contemplated that a subdivision would probably be formed and neither of the tracts alone was of sufficient size for this purpose. This feature plays no part in a determination of the controversy.
*58 One of the properties was owned by-Walter Gallo, an uncle of all of the other defendants, who owned the other piece of property and were the children of a deceased brother. They were Peter Gallo, Charles C. Gallo, John Gallo, Sr., Mrs. Rosine Gallo, wife of Sal Tamburello, and Mrs. Nancy Gallo, wife of Mike Caluda. They all refer to Walter Gallo as Uncle Bat and all, with the exception of Peter, state that anything- Uncle Bat did concerning their property would be satisfactory to them.
Each of the defendants executed a separate listing contract, hut in all of the terms and conditions they were identical and all were dated September 29, 1961 and gave the plaintiff partnership a term of six months to locate a purchaser.
Although the listing contracts for the two properties require that the purchase price of each be paid wholly in cash, plaintiff contends that shortly before the expiration of the term of those contracts defendants orally agreed that the plaintiff might secure a purchaser on terms, and that such a purchaser was secured before the expiration of the contracts. When this contention made its appearance, counsel for all defendants maintained that the terms of a written contract could not be changed by oral agreement and that, therefore, since the plaintiff based its claim on an oral agreement no cause of action was shown.
This feature of the controversy may be disposed of immediately. A listing contract made by an owner with a real estate agent need not be in writing. Whatley v. McMillan, 152 La. 978, 94 So. 905; Veters v. Krushevski, (cert. denied) La.App., 100 So.2d 93; Lally v. Doussat, La.App., 31 So.2d 41. Accordingly, there was nothing which would have prevented the making of new contracts orally or to prevent making the changes orally in the written contracts.
Plaintiff contends that on March 21, 1962, which was ten days before the expiration of the listing contracts, it obtained from a prospective purchaser, Frank J. Tarantino, offers to purchase the property on terms and that these offers were submitted to the defendants at a conference, which it is asserted was held at Walter Gallo’s house and was attended by one of the partners of plaintiff, Paul Caruso, and by Charles Gallo, Walter Gallo, and John Gallo, Mrs. Walter Gallo, and Josephine, one of the aunts of some of the defendants.
John Gallo testified that such conference as was held was not held at Walter Gallo’s house but was at his house, and that there were present Peter Gallo, Paul Caruso and Frank J. Tarantino who came to his house to discuss a possible .change in the listing contracts and that was March 24, 1962. There is no doubt that Walter Gallo was not at that conference, and there is nothing to contradict his statement that he knew nothing about any suggestion that the listing contracts be changed until the following Sunday, and that he at no time agreed to any such change.
The evidence further leaves no room for doubt that if any such offer was submitted to those who were at the conference, no agreement was made that it would be accepted, and above all, there is nothing which would overcome the testimony of Walter Gallo that he was not at the conference and never agreed that the original listing contracts might be changed.
Plaintiff relies largely on the testimony of Peter Gallo, one of the owners of one of the properties, who states that Walter Gallo was at the conference and agreed at that time to the change in the contracts, but merely wanted to have the new contracts approved by his attorney. Peter Gallo is t a brother-in-law of Paul Caruso, one of the members of the plaintiff partnership. He did not contest the contention of the plaintiff and apparently was interested in having the plaintiff obtain judgment against his brothers and sisters and his uncle.
*59 The record is a lengthy one and contains the testimony of many witnesses, but no useful purpose would be served by a discussion of the statements made by each.
The contention that the entire matter was deliberately delayed until the "term of the written contract had expired is of little weight, since there was nothing that required the owners to make a new contract, verbal or written. If they had decided when the written contract was about to expire to accept payment on the terms, they could not have prevented the agent from continuing to attempt to find a purchaser for cash as required in the listing contracts.
If they themselves had found a purchaser, who was not willing to buy for cash and who had offered to buy on terms satisfactory to them, we see no reason why they should be required to report that purchaser to the agent and then let the agent submit to them the offer of the prospective purchaser. They would have been within their rights after the expiration of the listing contracts in selling the property to the purchaser, who offered to buy on terms and whom they themselves had found. The sale which defendants did make was on terms and was several months after the expiration of the listing contracts which they had made with the plaintiff.
The District Judge, in his reasons for dismissing the suit, says:
“The evidence in the case, in this Court’s opinion, fails to bear out the charge of the plaintiff of the conspiracy to defraud.
“The evidence fails to show that there was an actual cash offer presented to and accepted by the defendants during the duration of the listing agreement between September 29, 1961, and March 29; 1962.
“The evidence fails to show that all the defendants verbally agreed to vary the listing agreement from a cash to a credit arrangement.
“The evidence does indicate that there were some negotiations made towards the end of the term of the listing agreement between Mr. Caruso and some of the defendants, but the evidence indicates that there was no acceptability of any offer during the listing-period, or within 45 days thereafter.
“The record fails to demonstrate that the defendants, Charles C. Gallo, Mrs. Rosine Gallo, wife of Sal Tamburello, and Mrs. Nancy Gallo, wife of Mike Caluda, gave any consent on their part whatsoever to accept any offer.”
We agree with everything said by the District Judge and find nothing in the record to justify the conclusion that his finding was incorrect.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.