CUTRER, Judge.
A real estate firm, Perkins & Son, filed suit against Dalton Laborde to recover a commission allegedly due plaintiff as a result of a sale of property by Laborde to Kleinpeter Farms Dairy, Inc. From a judgment of the trial court awarding plaintiff $2,640.00, defendant perfected this sus-pensive appeal.
We affirm.
The appellant presents the following assignment of errors:
“1. In failing to determine first whether the broker had been employed by the defendant; and secondly, what the terms of that employment were; and thirdly, whether broker had discharged the duties intrusted to him in accordance with the terms and conditions of his employment to earn a commission.
“2. In finding that the broker was the procuring cause of a sale directly negotiated by defendant after broker failed to get an offer of any sort from prospect known by both broker and defendant prior to broker’s efforts.”
It was stipulated that Clyde Farr was a realtor and was employed by Perkins & Son during the time involved in this suit. It was further stipulated that Laborde sold the property to Kleinpeter Farms Dairy, Inc. on August 14, 1969 for a cash consideration of $44,000.00.
The first question for determination is whether Laborde had employed Farr to sell the property and, if so, upon what terms did the employment exist.
Laborde, an experienced real estate broker, testified that on or about June 1, 1969 he talked with Farr, also a realtor, about the 33 acres which Laborde had under option. Laborde stated that Farr informed him that he had a client, the *660 Kleinpeters, who Farr thought would be interested in the purchase of the property. Laborde agreed to accompany Farr to see the Kleinpeters about the sale. Laborde related that his agreement with Farr was limited to a certain price, commission, and time. Laborde contends that he told Farr that if Farr could sell the property within 10 days for $60,000.00 that he would give Farr, as a commission, the sum received above $50,000.00. The trial court did not accept the testimony of Laborde. The trial court noted that the testimony of Laborde pertaining to the limitations of the verbal agreement “has considerable doubt cast upon it” by the facts and circumstances herein. We agree with the trial court’s evaluation of Laborde’s testimony.
Farr testified that he and Laborde had known each other prior to this initial conversation as they had had previous real estate dealings. He informed Laborde that he could only work on a 6 per cent commission basis. Farr stated that Laborde agreed to allow him to offer the property to the Kleinpeters for $50,000.00. Farr and Laborde went to the Kleinpeter office where they met with Leon Kleinpeter, Jr., Leon Kleinpeter, Sr., Tommy and Vincent (Bobo) Kleinpeter. The 33 acre, tract was discussed. The Kleinpeters were familiar with the property as they had purchased several acres adjacent to this tract a few years before. The property was offered to the Kleinpeters for a price of $50,000.00. The Kleinpeters turned this offer down as being too high. They did relate, however, that they were interested at a lesser price and requested that Farr furnish them with a map of the property as they had some reservations about the title. Farr stated that Laborde delivered the map to him approximately one week or ten days later. Farr delivered the map to the Kleinpeters. Attached to the map was a note signed by Laborde (P-1), which read as follows:
“Dear Clyde:
“I had to take the Zerox, or waite untill late this afternoon, they got this right away.
“T hope you good luck with the Klcin-peters. You can reach me at 344-4231 leave word if you need me to sign the purchase agreement.
Yours,
Dalton L. LaBorde”
Farr further related that, as a result of a later discussion, Laborde agreed to reduce the offer to $47,500.00. As a result of this discussion an “Agreement to Purchase” was prepared by Farr (P-2) making the new offer and presented to Leon Klein-peter, Tr. This offer was rejected.
The testimony of Farr is corroborated by that of Leon Kleinpeter, Jr., the vice president of Kleinpeter Farms Dairy, Inc.
“Q Did you at this meeting with Clyde Farr, Dalton LaBorde, your father and two brothers discuss the purchase of this property from Dalton LaBorde ?
A Yes, we did.
Q Do you recall exactly what was discussed in regard to the purchase of the property? Tell the Court, in other words, what went on.
A We discussed price, quite naturally, and there was some question about the title. I think we discussed primarily those two things, the value and whether we could get a clear title to the property and, of course, at the time we felt that the price was too high and T think that pretty much was the way we left the thing. After that meeting, as I recall, T told them that T wanted a map of the property and they told me that they would get a map.
Q Did they furnish you with a map?
A Yes. As well as I remember, about a week later Mr. Farr brought me a map of the property.
*661 Q When you said you discussed price and the price was too high, do you know the figure that Mr. LaBorde was asking initially?
A Fifty thousand dollars is the figure that I recall.
Q After this first meeting, then Mr. Farr returned to your office to discuss this property at which time he brought you a map and also at that time he drew up a purchase agreement which has been introduced into evidence as Plaintiff-2. This is the purchase agreement here for originally $49,875. Did he discuss this purchase agreement with you?
A Yes. I'm fairly certain that this was the meeting that he offered the property at this reduced price which was $47,500, which was about $2,500 below what the original offer was.
Q Did you accept the figure of $47,500?
A No. I told him that I still thought the price was too high, that we were interested in the property but that we would think about it further and we wanted to clear the title up, be sure that that was clear too.”
On June 16 Laborde entered into a listing agreement with Martin Realty for the sale of the subject property. It is important to note that this agreement made the following reservation:
“The seller reserves three prospects, Ben Skillman, Thibodeaux and Leon Klein-peter, et al” (Emphasis added.)
We conclude that the trial court correctly evaluated the testimony in its conclusion that the employment agreement was not limited to ten days nor was the commission to be the sum above a net price of $50,000.00. The evidence is convincing that the verbal agreement of employment continued during the negotiations and that the commission would be 6 per cent of the sale price. The fact that the initial offer was $50,000.00; that the map was delivered to Farr approximately one week to ten days after the initial meeting with the note quoted supra; the second offer of $47,500.00 having been made on June 13; the reservation in the Martin listing of Kleinpeter as a prospect on June 16, all reflect that the agreement was not limited as contended by Laborde.
The next question for determination is whether Farr’s endeavors were the procuring cause of the sale.
In the case of Munson v. Alello, 199 So.2d 577 (La.App. 1 Cir. 1967) the court held as follows:
“(1, 2) A real estate broker whose efforts were the ‘procuring cause’ of a sale is entitled to be paid his commission, even though the sale is not consummated until after the expiration of the contract of agency. Bullis & Thomas v. Calvert, 162 La. 378, 110 So. 621 (1926); Lehmann v. Howard, 49 So.2d 453 (La.App. 2 Cir. 1950); Womack Agencies, Inc. v. Fisher, 86 So.2d 732 (La.App. 1 Cir. 1956); Foulks v. Richardson, 87 So.2d 335 (La.App. 1 Cir. 1956). As stated in the Womack Agencies case, supra, ‘procuring cause’ refers to the efforts of a broker in introducing, producing, finding, or interesting a purchaser, and means that negotiations that eventually lead to a sale must be the result of some active effort of the broker.
Farr testified that for a time, after the offer of $47,500.00, he was unable to contact Laborde as Laborde was out of the state. Farr stated that he did see Leon Kleinpeter, Jr., however, and discussed the sale with him on two or three occasions.
Leon Kleinpeter, Jr., testified as follows in this regard.
“Q Did you become interested in this property through Clyde Farr?
A Yes.
Q Did you remain interested in this property from the time that Mr. Farr
*662 introduced Mr. LaBorde to you up until August the 14th, 1969, which was the day that Mr. LaBorde relayed the property to you? Did you remain interested in the property during this period of time ?
A Well, I would think so. There was a little lull in there, possibly, a period that it wasn’t actively discussed but we were interested in the property. We just felt like the price was too high.
;¡{ ^
Q During this period of lull, so to speak, did you see Clyde Farr occasionally and discuss this property with him ?
A Yes.
Q Inquire as to the status of the option?
A Yes.
Q Did Mr. Farr keep you informed to the best of his knowledge as to the status of this property?
A Yes.”
Kleinpeter further testified that when Laborde came to him with the final offer of $44,000.00, he inquired of Laborde as to Farr’s status. He was informed by La-borde that Farr was not representing him in the sale any longer.
We are convinced that Farr was the procuring cause of the sale from Laborde to Kleinpeter. He produced the ultimate buyer. He pursued the matter and his efforts were instrumental in the final consummation of the sale by Laborde. Since Farr was the “procuring cause” of the sale, the plaintiff is entitled to the commission. The case of Corbitt v. Robinson, 53 So.2d 259 (La.App.2d Cir. 1951) held as follows:
“(2, 3) We think the law applicable to the case before us is the same as set forth in the following quotation from U. S. Realty Sales of Shreveport v. Rhodes, La.App., 34 So.2d 523, 524:
‘We concede the proposition of law urged by the plaintiff that one who is employed as a broker becomes entitled to his commission whenever he procures for his principal a party with whom he is satisfied and who actually contracts for the purchase of the property and that once the owner and purchaser are brought together through the broker’s efforts the fact that the sale is after-wards consummated between owner and purchaser without the broker’s knowledge or presence does not relieve the owner from liability to pay the broker’s agreed commission. Sollie v. Peoples Bank & Trust Co., La.App., 194 So. 116.’”
For the reasons assigned, the judgment appealed from is affirmed. Appellant to pay costs.
Affirmed.